## HAINES v. FIRST NAT. BANK OF MIDDLETOWN, OHIO.

(Circuit Court of Appeals, Sixth Circuit. February 14, 1913.'

No. 2,242.

1. APPEAL AND ERROR (§ 1019*)—FINDINGS OF MASTER—REVIEW.

Where a case was referred to a master to hear and determine all matters in controversy, the master's findings on conflicting evidence, while not conclusive, will be sustained unless manifestly erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4008–4010; Dec. Dig. § 1019.*]

2. TRUSTS (§ 105*)—CONSTRUCTIVE TRUSTS—MISAPPROPRIATION OF FUNDS.

Where it did not appear that a corporation was insolvent and that it had ceased to prosecute the objects for which it was created when certain of its funds were used to pay notes to a bank, executed by its president to cover an alleged loss by the failure of the former corporation, the money so paid was not impressed with a trust so as to be recoverable for the benefit of the estate of the new company in bankruptcy.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 156; Dec. Dig. § 105.*]

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Intervention by the First National Bank of Middletown, Ohio, against H. H. Haines, receiver of the New Decatur Buggy Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Kramer & Bettman, of Cincinnati, Ohio (Gilbert Bettman, of Cincinnati, Ohio, of counsel), for appellant.

B. F. Harwitz, of Middletown, Ohio, and Joseph W. O'Hara, of Cincinnati, Ohio, for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and SATER, District Judge.

PER CURIAM. This was a case begun by appellee in another cause pending in the court below, by filing therein its intervening petition against Haines, as receiver of the New Decatur Buggy Company, alleging that the receiver had been authorized by the court to borrow money to carry on the business of the buggy company; that under such authority the receiver borrowed from the bank three sums of money and gave to the bank his three promissory notes payable to

---

its order and dated, respectively, May 30, June 3, and June 19, 1908, the first two for $1,500 each with interest at 6 per cent. per annum, and the third for $1,000—each note being in substance described in a separate count, with copy attached as an exhibit—and alleging refusal of payment, with the ordinary prayer. The answer admits these allegations. Avoidance is sought by averment that the bank is indebted to the receiver in excess of the amount of the notes, for the reasons: That prior to the existence of the New Decatur Buggy Company there was a corporation known as the Decatur Buggy Company, which, on May 11, 1904, was adjudged bankrupt in the court below, and among its debts was one of $14,227.75 owing to the intervening bank; that on January 23, 1905, the New Decatur Buggy Company (of which appellant is receiver) was organized as a corporation under the laws of Ohio, and in the following July, Harry H. Elwood, one of the defendants, executed and delivered to the bank 81 promissory notes, each for $50, payable on Monday of each week beginning February 20, 1905, and ending September 3, 1906; that these notes were payable to the order of the new buggy company, were indorsed by it, and paid out of its assets; that no consideration was given for the notes but that they were given to reimburse the bank in part for a loss it suffered as a creditor of the old buggy company; that such payment by the new company was a diversion and misappropriation of its money and was "unlawfully and fraudulently received by said intervener"; and that the bank is indebted to the receiver for the sum of said notes, to wit, $4,050, with interest from September 3, 1906, as "for moneys had and received to the use and benefit of" the new buggy company. The prayer is that the intervening petition be dismissed and that the notes sued on be canceled.

The bank's reply denies such alleged diversion and misappropriation; avers that if the 81 Elwood notes were paid by the new buggy company the bank had no knowledge of such facts and believed the notes were paid by Elwood; denies the right of set-off, because the alleged transactions were between other persons and are not connected with and do not arise out of the matters set up in the intervening petition, and because the new company is indebted to the bank in a sum (distinct from that represented by the notes sued on) in excess of the amount claimed by the receiver and that if any right of set-off exists it ought to be made against the sum so due and owing by the new buggy company to the bank.

By consent of parties a reference was made by the court to a special master "to hear and determine all matters in controversy" under the pleadings; and the special master was "directed to report all the evidence adduced before him, with his findings of fact and conclusions of law separately."

The case was tried and submitted to the special master upon written evidence and the testimony of a number of witnesses produced before him. His findings, among others, were that the bank's loan to the receiver upon his notes amounted to $4,000, with certain interest; that Elwood was president and general manager of the old company and later of the new company; that Elwood executed his 81 notes to

settle a loss of the bank through the failure of the old buggy company, for which loss "Elwood considered himself personally liable"; that the diversion of assets in fact occurred, but as to whether the bank received the moneys "with the knowledge that they were wrongfully diverted" the master found:

"This question must be answered in the negative. There is absolutely no evidence to show, that the First National Bank or any person connected therewith had any knowledge of the fact that there was a diversion of the assets of the New Decatur Buggy Company by any of its officers by reason of which the First National Bank was deriving any benefit."

Among his conclusions of law, the master held in favor of the bank upon its notes, unless the receiver had shown that the assets of the new buggy company ($4,050) were "unlawfully and fraudulently received by the bank." He held as a matter of law that the receiver could offset his claim for such diverted assets against the notes of the bank, but that the bank could not offset its claim for money loaned otherwise than upon such notes to the new buggy company, against such claim for diverted assets. However, the master allowed recovery by the bank upon the three promissory notes sued on with interest. This result was manifestly reached through the finding that the bank had no knowledge of such fact of diversion of the new company's assets.

[1] In the court below the action of the special master was confirmed. In the decree it is stated:

"Upon consideration whereof the court finds that said master was appointed by consent of the parties to hear and determine all matters in controversy, and report his findings and conclusions to the court, and that there was some testimony to support the master's findings herein, and that his findings and conclusions depended upon conflicting testimony and upon the credibility of witnesses. The court therefore finds the master's findings of fact unassailable."

However, the learned trial judge believed the finding as to the bank's want of knowledge touching the diversion of assets was erroneous, and was constrained to confirm that finding only in obedience to the decision in Davis v. Schwartz, 155 U. S. 631, 638, 15 Sup. Ct. 237, 239 (39 L. Ed. 289), where, respecting a finding reported under a reference made by consent of parties to a master "to hear said causes and report to this court his findings of facts and conclusions of law" (155 U. S. 636, 15 Sup. Ct. 239, 39 L. Ed. 289), it was said by Justice Brown:

"* * * * So far as it (the finding) depends upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable."

It is forcefully contended by learned counsel that it was not necessary to the decision in that case to hold that the finding should be treated as "unassailable," and that this was inconsistent with the settled rule of the Supreme Court in that behalf. We are not called upon to pass upon this feature of the argument; for, in addition to

what is before pointed out in the ·decree, when alluding to the master and his findings the court below stated at the close of the opinion:

"The testimony before him was conflicting. He had to pass and did pass on the credibility of witnesses and there was testimony consistent with the master's finding. * * *"

The reference in this case was very broad; it was not only made by consent of the parties, but it empowered the special master "to hear and *determine* all matters in controversy." In view of such consent and power, and also of the findings of the decree and statement in the opinion, before pointed out, and clearly justified by the record, we think the case falls within the acknowledged rule of the Supreme Court touching the effect of a master's findings under a state of evidence such as that described by the court below. Kimberly v. Arms, 129 U. S. 512, 524, 9 Sup. Ct. 355, 359 (32 L. Ed. 764).[1] In that case the special master was appointed by consent and request of the parties and given power "to hear the evidence and decide all the issues." It is true that the right is there declared to reside in the court to set aside the findings of the master "where there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise." The weight thus given to such findings is due to the fact that the reference is—

"* * * by consent of parties, of an entire case for the determination of all its issues, though not strictly a submission of the controversy to arbitration—a proceeding which is governed by special rules—is a submission of the controversy to a tribunal of the parties' own selection, to be governed in its conduct by the ordinary rules applicable to the administration of justice in tribunals established by law."

Now, recognizing the right to set aside the master's findings, it does not seem to us that the evidence as a whole is *manifestly* inconsistent with the claim in substance urged that the bank believed either that the moneys applied in payment of the notes belonged to Elwood or that his obligation upon the notes was rightly assumed ·by the new company.

[2] The point made, that independently of the findings the money paid in discharge of the 81 notes of Elwood was impressed with the character of a trust and can be recovered for that reason, is not tenable. It does not appear that the corporation was insolvent and that it "ceased to prosecute the objects for which it was created" within that period, and consequently the case of Rouse, Trustee, v. Merchants' National Bank, 46 Ohio St. 493, 22 N. E. 293, 5 L. R. A. 378, 15 Am. St. Rep. 644, relied on by appellant, is not applicable. It would seem rather that cases like Graham v. Railroad Co., 102 U. S. 153, 154, 26 L. Ed. 106, are in point. This is strengthened by the fact that moneys and negotiable instruments only were used in the transactions resulting in the diversion. Spaulding v. Kendrick, 172 Mass. 71, 72, 51 N. E. 453; Stephens v. Board of Education, 79 N. Y. 183, 187, 35 Am. Rep. 511; Holly v. Missionary Society, 180

---

1 That case, as well as Davis v. Schwartz, was followed by this court, the present Mr. Justice Lurton announcing the opinion, in Singleton v. Felton, 101 Fed. 527, 42 C. C. A. 57.

U. S. 284, 290, 293, 21 Sup. Ct. 395, 45 L. Ed. 531; State Bank v. United States, 114 U. S. 401, 410, 5 Sup. Ct. 888, 29 L. Ed. 149; Gay v. Hudson River Electric Power Co. (C. C.) 190 Fed. 773, 804; Kimmel v. Bean, 68 Kan. 598, 75 Pac. 1118, 64 L. R. A. 785, 104 Am. St. Rep. 415. It is not necessary to determine the other questions presented.

The decree below must be affirmed, with costs.