In re NATIONAL PRESSED BRICK CO.

NEWTON v. MICHIGAN CHEMICAL CO. et al.

(Circuit Court of Appeals, Sixth Circuit. April 16, 1914.)

No. 2471.

1. BANKRUPTCY (§ 463*)—APPEAL—RETURN—FILING—TIME—EXTENSIONS—RULES.

Where the filing of a return was due February 8th, and an order of extension recited that it was "duly granted" on that day, but had been inadvertently omitted from that day's record and was not actually entered until February 10th, it would be conclusively presumed on appeal that the recital expressed the truth, and hence a motion to dismiss could not be granted on the ground that the extension was not made in time.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 926; Dec. Dig. § 463.*]

2. CORPORATIONS (§ 80*) — SUBSCRIPTION — FRAUDULENT REPRESENTATIONS — WAIVER OF FRAUD.

Where claimant was induced to purchase stock in a bankrupt corporation by fraudulent representations of a promoter, but with knowledge of the fraud claimant paid an installment on the stock and participated in the management of the corporation's affairs and only sought to rescind after he became convinced that it could not proceed with its activities at a commercial profit, the fraud was waived.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. § 80.*]

3. CORPORATIONS (§ 80*)—STOCK SUBSCRIPTION—RESCISSION—FRAUD.

Where claimant was induced to subscribe for stock in a corporation organized to manufacture binder-process sand brick, a representation by a promoter, who induced claimant to subscribe, that the brick could be made at $8 a thousand and were salable at $22, was a mere expression of opinion and could not be made the basis of fraud authorizing a rescission of the subscription.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. § 80.*]

4. BANKRUPTCY (§ 457*)—ALLOWANCE OF CLAIMS—CREDITOR'S RIGHT OF APPEAL.

A bankrupt's creditor under proper circumstances may be permitted to appeal from an order allowing claims against the bankrupt's estate when the trustee has refused to do so.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 917; Dec. Dig. § 457.*]

5. BANKRUPTCY (§ 457*)—ADMINISTRATION OF ESTATE—ALLOWANCE OF CLAIMS—APPEAL.

A creditor of a bankrupt is not entitled to appeal from an order allowing other claims against the bankrupt's estate, where the assets of the estate are amply sufficient to pay all scheduled claims.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 917; Dec. Dig. § 457.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. BANKRUPTCY (§ 457*)—CLAIMS—ALLOWANCE—RIGHT OF APPEAL—STATUS OF APPELLANT.

Where claimant, who was a stockholder in a bankrupt corporation, sought to rescind his subscription and recover the amount paid from the estate, and during the litigation constantly claimed to occupy the position of a creditor and disclaimed the status of a stockholder, he could not appeal from an order allowing other claims against the estate in the capacities both of stockholder and creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 917; Dec. Dig. § 457.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

In the matter of bankruptcy proceedings of the National Pressed Brick Company. From an order of the District Court confirming the findings of the referee, disallowing the claim of Thomas W. Newton, and allowing the claims of the Michigan Chemical Company and others, Newton appeals. Affirmed as to the disallowance of Newton's claim, and appeal dismissed as to the others.

The case is here on appeal from an order of the District Court confirming the findings of the referee in bankruptcy which disallowed appellant's claim, and allowed certain other claims, against the estate of the bankrupt.

In December, 1909, Haskin, Newell, and Nicol, organized, under the laws of Arizona, a corporation called the Michigan Chemical Company. This company was never authorized to do business in Michigan. It had as its principal asset a secret formula for making a binder for the manufacture of pressed sand brick. Later the three parties named, who had meanwhile interested several others procured the incorporation, also under the statutes of Arizona, of the present bankrupt corporation; and on April 12, 1910, the interested parties, who included appellant, held the first stockholders' meeting at Detroit, Mich. The organizers of the chemical company seem to have intended that that company should not manufacture brick, but should merely give rights to use the formula to brick-manufacturing companies such as the present bankrupt corporation, which it was intended should have the exclusive right to use the binder in question for manufacturing purposes in Wayne county, Mich.; the binder to be actually manufactured by the chemical company. Of its $100,000 capital stock the brick company issued $77,170 (par), of which amount $31,670 (par) was sold for cash at prices ranging from 50 to 90 per cent. of par value, and aggregating $18,236.01; $41,000 (par) was used at an agreed price of 50 cents on the dollar in the purchase of brick-plant machinery, real estate, and buildings; the remaining $4,500 seems to have been sold at par. At the time of the first meeting of stockholders, appellant verbally agreed to take $5,000 (par) of stock at 80 cents. He paid, April 16, 1910, $2,400, and on August 1st following $1,000. The remainder of his subscription was never paid. The brick company purchased a manufacturing site near Detroit, erected a building thereon, purchased certain brick-making machinery, and attempted to manufacture brick. The enterprise was unsuccessful. In February, 1912, appellant filed his bill on the chancery side of the circuit court for Wayne county, Mich., for the recission of his stock purchase, on the ground of fraudulent representations inducing the same. Immediately thereafter, and as the result thereof, the corporation went into voluntary bankruptcy. The chancery suit is still pending. Appellant filed against the bankrupt estate a claim for the $3,400 paid for his stock, alleging that his purchase was in consequence of fraudulent representations made by Haskin, the principal fraud alleged being that Haskin showed appellant samples of brick alleged to have been made under the process in question; represented that the brick company had the exclusive right

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the use of the secret process mentioned; that the chemical company would, under contract theretofore made, furnish to the brick company the binder for the use in brick manufacture at a price that would enable the brick company to manufacture at a maximum cost of $8 per thousand brick equal to the sample shown by Haskin, and equal in appearance and quality to face brick sold in Detroit at $22 per thousand and upwards; also, that the brick company had sufficient funds on hand with which to build a plant that would turn out 15,000 to 20,000 of such brick per day, at the maximum cost stated.

The referee found as a fact that before appellant paid for any of his stock, and before the organization of the brick company was completed, Haskin made to appellant the claimed representation as to the number of brick per day that the company could make, and their manufacturing cost and selling value respectively; also, that the company had machinery and sufficient capital to erect and equip a plant for making brick; and that this latter representation was untrue. He also found that brick-making machinery which the promoters of the chemical company had contracted to purchase at $5,-500 was sold to the brick company for that amount in cash, plus $25,000 par value of the stock of the brick company (which was part of the $41,000 stock before referred to, as used for purchase of real estate, machinery, and buildings), which was reckoned at 50 cents on the dollar, and that this machinery deal was unknown to appellant when he paid the first $2,400 on his stock purchase, but that he had full knowledge of it before he made the second payment of $1,000; also, that there was no testimony showing that Haskin did not believe the statements made by him to be true, and that they appeared to be the usual representations made with reference to many new lines of untried manufacturing enterprises; also, that the evidence did not sufficiently show that Haskin did not expect and believe that the machinery would do all that was represented. The referee further found that appellant was at the Detroit plant a portion of the time during the erection of the building and the installation of the machinery; that as early as August, 1910, and before the second payment of $1,000 on the stock purchase was made, he learned fully of the details respecting the purchase of the machinery and its sale to the brick company, and partly because of such knowledge refused to take up and pay for the remaining $750 (par) of stock; also, that during the last three months of the year 1910 appellant became fully informed of all the details of the organization and promotion of the bankrupt corporation; and in January or February, 1911, employed an attorney who, with appellant, examined all the records of the proceedings of the corporation, which disclosed to appellant substantially all the facts he claimed not to know when he purchased, or agreed to purchase, his stock; that after obtaining such full knowledge, and "after it had become probable, though perhaps not entirely certain, that the bankrupt corporation could not make brick with the machinery," appellant attended the annual stockholders' meeting in April, 1911, and took part as a stockholder in the election of directors; that appellant also attended stockholders' meetings in October and November, 1911, at one of which meetings he took part as a stockholder, in connection with resolutions providing for changing the plant so as to manufacture brick from shale instead of sand; that appellant attended a later stockholders' meeting in January, 1912, and took part in connection with questions relating to a sale of the plant and assets of the corporation.

The referee found as a fact that the corporation was solvent when the bankruptcy proceedings were begun, and that there were still funds at the time of the report in the hands of the trustee sufficient to pay in full all claims scheduled, plus the costs and expenses of administration, and leave some funds to be returned to the stockholders.

The referee was of opinion: (a) That Haskin was not authorized to represent the brick company in making the representations in question; and (b) that whatever right of rescission existed was lost by appellant's election to stand as a stockholder and not as a creditor; and, without expressing an opinion as to whether appellant had a right to rescind as against the corporation or the individuals alleged to have defrauded him, held that appellant had not a provable claim in bankruptcy.

The claim of the chemical company was allowed at $1,240.31 (for unpaid price of brick machinery sold), on condition that it surrender the full $25,000 of stock issued in connection with the machinery purchase. The claim of Mallow Bros., which was largely for material used in building the brick company plant, was allowed at $1,681.55, being the amount remaining after allowing the agreed price of $5,000 for $10,000 par value of brick company stock received by the builders, which also was part of the $41,000 stock item before referred to. The remaining claims allowed, which amounted to $3,000, do not require specific mention.

The District Court confirmed the finding of the referee.

F. H. Aldrich, of Detroit, Mich., for appellant.

E. T. Berger and Allan Campbell, both of Detroit, Mich. (E. R. Milburn and Stanton Clarke, both of Detroit, Mich., of counsel), for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge (after stating the facts as above). [1] We are asked to dismiss the appeal from the disallowance of the Newton claim because return was not made by February 8th, which was the last day therefor in the absence of extension. Rule 18 of this court authorizes the judge who signed the citation to "enlarge the time for return at or before its expiration." The order of extension was not actually entered until February 10th, but the order expressly recites that it was "duly granted" on February 8th, and had "been inadvertently omitted from the record of that day." We must conclusively presume that this recital expresses the truth, and the order must thus be treated as if made and entered on February 8th. The motion to dismiss must accordingly be denied.

[2] Turning to the merits: The representations that the brick company had machinery and sufficient capital to operate were material; and we shall assume, for the purposes of this opinion, that the brick company was sufficiently organized to make Haskin's representations binding upon it with respect to a transaction of which the brick company has had the benefit. The referee and the court have found, however, that appellant had early knowledge of the falsity of the representations we are considering, and that with such knowledge he elected to maintain his status as a stockholder, participating as such until just before the bankruptcy, which seems to have been precipitated by the bill filed by appellant to rescind his purchase. These concurrent findings of the referee and judge must be accepted unless clearly wrong. Haines v. Bank (C. C. A. 6th Cir.) 203 Fed. at page 228, 121 C. C. A. 431; Western Transit Co. v. Davidson Steamship Co., 212 Fed. 696, 129 C. C. A. 232, decided by this court March 13th last. The rule announced by these cases is especially applicable where, as is the case here, the entire testimony was taken before the referee. Wabash Ry. Co. v. Compton (C. C. A. 6th Cir.) 172 Fed. 17, 21, 96 C. C. A. 603. We find nothing seriously impugning the correctness of these concurrent findings, unless in respects not deemed controlling. True, we are cited to no testimony that appellant's employment of attorney was as early as February, 1911; and the record is perhaps more consistent

with the conclusion that he did not actually attend the stockholders' meeting at which the action was taken to change the process of manufacture from sand to shale; and, while he attended the meeting at which it was decided to close down the plant and sell out the assets, the record does not show how he voted, and he denies having done so. But these discrepancies, so far as they are such, are not controlling. Appellant knew in September, 1910, about the sales of stock below par and what each stock purchaser had paid; also, that the brickmaking machinery was secondhand; that it had been bought for $5,-500, and was being resold to the brick company for that amount plus $25,000 par of brick company stock; also, that the building was to be paid for largely in stock. He seems to have cared little for these matters, and if the company had proved able to make brick commercially and profitably he would have been satisfied. There was no representation that the samples of brick shown were made by this machinery. The reason he failed to take the remaining $750 par of stock was that the company did not succeed in making brick; and he admits he knew he was foolish to pay the last thousand dollars, which was paid in August, 1910. It is fairly open to inference that, if appellant was not actually convinced, he had at least good reason to believe before January, 1911, that the company could not with commercial profit make sand brick by the process involved. He at least knew of the action had November 4, 1911, to change to the shale process; for as to meetings he did not personally attend he seems to have been kept advised by Dr. Cronin, his fellow townsman and family physician. The conclusion is irresistible that for a year after he had reason to believe the company was not likely to make good he participated, as stockholder, in the carrying on of the business. Meanwhile, it is fair to presume, the net assets of the company became of less distributive value than when bankruptcy intervened. To now permit rescission would be to allow appellant to obtain a larger share of the assets than other stockholders, some, at least, of whom appear to have been as deserving of indulgence as he. We think as to the representations now in question he must be held to have elected to maintain his status as stockholder. The rule is well settled that any decisive act of a party with knowledge of his rights and of the facts determines his election in case of inconsistent remedies; and that the exercise by a buyer of acts of ownership over property bought which are inconsistent with a right to rescind the contract constitutes a waiver of such right. See Roseboom v. Corbitt, 196 Fed. 627, 633–635, 116 C. C. A. 301, decided by this court, where a number of authorities are collected.

[3] The representation that by the binder process brick could be made at $8 per thousand, salable at $22, must be regarded as a mere expression of opinion. No criticism is made upon the merits of the brick actually shown by Haskin to appellant, and there is no doubt that the samples so shown had been actually made by Haskin, either alone or with his associates, under the formula, at a brick-machining plant. There was no representation that the manufacture of brick under this process had been commercially carried on; the accuracy of the representation as to cost, profit, and salability could only be determined

by a testing out through actual commercial manufacture, and appellant must, in the nature of things, have so known. We are not convinced that Haskin did not expect and believe that the manufacture would be commercially profitable.

The representation that the brick company had the exclusive right to use the secret process, although not strictly accurate, could not well have prejudiced appellant. It seems to have been understood that the chemical company was to manufacture the binder for the brick company for a price to be paid therefor. It does not seem to have been represented or expected that the brick company was to have control of such binder manufacture, or that its officers and stockholders were necessarily to know the formula. True, it turns out that there had been no written contract between the chemical company and the brick company respecting the use of the binder, and the price for its manufacture had not been fixed; but no controversy seems to have arisen over this subject, and it is not claimed, as we understand the record, that the disappointment regarding, and subsequent abandonment of, the binder process was caused, or in any way contributed to, by any lack of actual ownership of the formula as between the chemical company and the brick company, or by reason of the terms on which the chemical company manufactured or was willing to manufacture the binder for the brick company. Indeed, representatives of the chemical company assert (without contradiction so far as we can find) that an exclusive right to the benefit of the formula in Wayne county, or at least Detroit, was intended to be passed to the brick company; and the binder, so far as used by the brick company, seems to have been furnished by the chemical company at no more than cost. The abandonment of that method of manufacture was due only to the failure of the process to work commercially; in other words, to make brick that would hold together. Appellant, apparently, expressed the situation, when he said:

"I don't know, only this much, if you will allow me to say it, that I think the doctor [Haskin] fell down on his proposition. I don't think he could make the brick. He might make a few in a kind of a laboratory test, but to make it by the wholesale, I don't think he could make them."

The investment was naturally a serious disappointment to appellant, as it doubtless was to several other investors. But upon the case presented, we think appellant's claimed right of recovery of the price paid for his stock was properly denied.

[4] Motion is made to dismiss the appeal from the allowance of the other claims because not taken by the trustee, and for lack of evidence that that officer had refused a request to appeal. A creditor may, under proper circumstances, be permitted to take an appeal when the trustee has refused to do so. Ohio Valley Bank Co. v. Mack (C. C. A. 6th Cir.) 163 Fed. 155, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184. See, also, In re Roadarmour (C. C. A. 6th Cir.) 177 Fed. 379, 380, 100 C. C. A. 611. While the record returned to this court contains, we think, no competent and sufficient evidence of a demand upon, and refusal by, the trustee to appeal, or that the referee refused to direct appeal by the trustee, yet we should hesitate to ignore the undisputed affidavits

filed in opposition to the motion to dismiss, which show such express demand upon and refusal by the trustee, and a refusal by the referee, following the appeal, to direct the trustee to enter his appearance and proceed with the appeal.

[5] The referee has found, however, as a fact that the assets of the bankrupt estate are amply sufficient (net) to pay all claims scheduled; and, if this is so, appellant had no right or occasion, as a creditor merely, to appeal from the allowance of the other claims; for in the capacity of creditor he had no legal interest in such claims. The final determination that he is not a creditor effectually deprives him of such interest, and renders immaterial the criticisms urged against the correctness of the referee's finding of solvency. The appeal from the allowance of such other claims should therefore be dismissed, unless appellant is properly here as a stockholder also.

[6] But assuming that a mere stockholder in a bankrupt corporation has a right to appeal from an order allowing creditors' claims, otherwise than through the trustee or in his name by the sanction of the court (a question we have no occasion to pass upon), it is enough to say that appellant has, in the bankruptcy proceeding, continuously disclaimed the status of stockholder; and, as we interpret the record, has, as a creditor only, claimed and been granted an appeal from the allowance of claims other than his own, which claims he was specially interested in defeating, if the bankrupt was insolvent; as their allowance would, in such case, reduce the amount of his recovery as a creditor. Appellant's claimed status of creditor is absolutely inconsistent with a stockholding relation. He could not at the same time have maintained appeals in both capacities.

The appeal from the allowance of the claims of others than appellant will therefore be dismissed. The order disallowing appellant's claim is affirmed, with costs, but without prejudice to such right of action, if any, as appellant may have against any of the individual parties on account of such stock purchase, or to such proceedings, if any, as the trustee may be advised to take on account of sales of corporate stock at less than par. We must not be understood as intimating an opinion whether or not such rights of action exist.