### In re UTICA PIPE FOUNDRY CO.

(District Court, N. D. New York. April 15, 1915.)

1. BANKRUPTCY &#8258;340—CLAIMS—SUFFICIENCY OF EVIDENCE.

On a hearing on claims against a bankrupt on alleged contracts of employment, evidence *held* to support the finding of a special master that the offer of employment was contingent on the bankrupt purchasing or taking over a business with which the claimants were connected.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. &#8258;340.]

2. EQUITY &#8258;409—REVIEW OF FINDINGS OF SPECIAL MASTER OR REFEREE.

The findings of a referee or special master on questions of fact will be adopted and approved, where there is a sharp dispute in the testimony, unless it clearly appears that the finding and conclusion is unsupported by the evidence, or clearly against the weight of the evidence, and it is not enough that the court might have arrived at a different conclusion.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 904, 920–923; Dec. Dig. &#8258;409.]

In Bankruptcy. In the matter of the Utica Pipe Foundry Company, bankrupt. On application by the trustee in bankruptcy for confirmation of the report of the special master, disallowing and dismissing the claims of Charles A. Xardell and Joseph A. Xardell, respectively, and application by said claimants, on exceptions filed to the report of the special master, for an order setting aside or refusing to confirm such report, and allowing such claims. Report approved and confirmed.

Martin & Jones, of Utica, N. Y., for claimants.
Lynch, Willis & Titus, of Utica, N. Y., for trustee.

RAY, District Judge. The claimant Charles A. Xardell presented a verified claim against the bankrupt corporation for $3,330 for damages for breach of contract of employment, alleging that a valid contract was made, and that the corporation without cause or reason violated same by refusing to employ him or allowing him to perform under his said contract and agreement. The claimant Joseph A. Xardell presents a similar claim for the sum of $1,500.

&#8258;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

As these claims were unliquidated, on application to the court an order was made for their liquidation before Frederick J. De La Fleur as special master. The special master took the evidence and made his report, in which he holds and finds that no valid or legal contract was ever made between the respective claimants and the Utica Pipe Foundry Company, now bankrupt, inasmuch as the minds of the parties never met. He therefore found that the claims should be disallowed and dismissed. This court has listened to the arguments of counsel, and carefully read and considered the testimony given by the witnesses for the respective parties, and has also considered the exhibits placed in evidence.

[1] There was a sharp conflict in the testimony on the question whether or not a contract of employment as alleged in these claims, or any contract of employment, was actually made between the respective claimants and the Utica Pipe Foundry Company, through its agents and representatives. The special master found and stated that there were negotiations between the respective parties, but that the offer of employment was contingent upon the happening of a certain event, to wit, on the Utica Pipe Foundry Company purchasing or taking over from a certain bankrupt concern, the Xardell Company, of Utica, N. Y., its business, or part of it, and thereby taking on, in addition to its then business, a side line or additional business.

With this Xardell Company these claimants had been connected, and it is not doubted that they were anxious to have the business disposed of to and purchased by the Utica Pipe Foundry Company. It is not doubted that the Utica Pipe Foundry Company, through its authorized agents, seriously contemplated purchasing this property of the bankrupt company, the Xardell Company, and adding it as a side line to the business they were then conducting. An inventory of the property of the bankrupt company was then being taken, and it also appears that certain inquiries and investigations were under way. The claimants contend that on or about the 22d day of July, 1913, negotiations were had, and that it resulted in a definite and explicit agreement of hiring and terms of employment, payment, etc., for one year, and that the claimants entered on the performance of their duties under and pursuant to such employment, but that early in August the Utica Pipe Foundry Company repudiated its agreement and refused them employment, and denied that a contract had been made.

The representatives of the Utica Pipe Foundry Company, or one of them, insists that during such negotiations it was explicitly and definitely stated by him that the negotiations and proposal to hire and give employment was contingent on the Utica Pipe Foundry Company purchasing the property of said Xardell Company, then in bankruptcy, and taking over that business, and that this was understood.

It cannot be doubted that the representatives of the Utica Pipe Foundry Company at that interview expected that the said corporation, Utica Pipe Foundry Company, would be satisfied with the property of the Xardell Company and the prospects of the business, and would conclude to take it over and add it to the business of the Utica Pipe Foundry Company. The claimants were very anxious that this should

be done, and were also anxious to be employed in that same business by the Utica Pipe Foundry Company. There was a suggestion or a proposition that, in order to keep the business which had been conducted by the Xardell Company alive and going, certain letters should be prepared and sent out. It cannot be denied that these claimants did very soon, and almost immediately after the 22d of July, prepare and send out certain letters assuming that the proposed purchase would be made, representing that it had been made, and giving orders on the strength thereof. The representative of the Utica Pipe Foundry Company testifies, however, that there was nothing definite or certain about this, and that the claimants were cautioned as to the tenor of the letters to be sent out, and that their employment and the taking over of the business and continuation of it by the Utica Pipe Foundry Company was a matter not definitely settled upon.

These letters, or some of them, were sent out July 23, 1913, the day after the making of the alleged contract of employment; but letters sent out by these claimants the next day, stating, as the letters do:

"We beg to advise you that our new organization has been completed, and within a few days we will be in position to take care of your requirements in any quantity that you desire. Our capacity will be greatly increased by additional equipment, and further by operating our own foundry both for gray iron or brass castings. Ample capital is provided, so that we will have no difficulty in taking care of your orders and making prompt shipment on such orders as you care to place with us. The writer sincerely hopes that you will favor us with the continuation of your business, and personally will assure you that you will be pleased with the manner in which we take care of your business"

—do not show that the business had been taken over by the Utica Pipe Foundry Company, or that it had entered into a contract with either of the Xardells, even if such letters were written with the knowledge and approval of the Utica Pipe Foundry Company, which does not appear from the evidence. July 24th one or more letters were written by one of the Xardells, in which it was stated:

"The writer begs to advise that the reorganization of our company has been completed by consolidating with the Utica Pipe Foundry Company of this city. This will give us ideal manufacturing facilities, as it is a large corporation with plenty of capital, and their equipment of machinery together with ours will give us a very large output. Operating our own foundry both for iron and brass makes us independent of outside sources for material, and you can rest assured of very prompt deliveries. We are working on your patterns and dies to get an early start on your deliveries, as we understand that you will want deliveries in the latter part of August. Please forward order as soon as convenient, and make it out to Utica Pipe Foundry Company, as our department will be known as the Automobile Parts Division."

This letter just quoted was addressed by one of the Xardells, who signed it, to the Studebaker Corporation, Detroit, Mich. This letter does not appear to have been communicated to or approved by the Utica Pipe Foundry Company. As matter of fact, no such reorganization of the Xardell Company had been completed by consolidating with the Utica Pipe Foundry Company. In point of fact, the property and business of the Xardell Company was never transferred to the Utica Pipe Foundry Company. It was in the hands of, and remained in the hands of, either a receiver or trustee in bankruptcy.

It may be that, if this court had seen and heard the witnesses who gave conflicting testimony as to what the agreement actually was, it would have arrived at a different conclusion from that reached by the special master. The special master both heard and saw the witnesses, and was therefore better able to arrive at a correct conclusion than is this court on conflicting testimony. The special master says that he thinks the witnesses intended, all of them, to speak the truth as they understood and understand and remember it, but that he is satisfied there was a misunderstanding, and that the minds of the parties never met on an agreement employing either of these claimants.

It would seem to this court that the Utica Pipe Foundry Company has the better of the argument, inasmuch as no writings were prepared or bills of sale executed transferring the property or business from the receiver or trustee in bankruptcy to the Utica Pipe Foundry Company. It is evident that no reorganization had been accomplished and that no taking over or taking on of the business of the Xardell Company had been perfected or completed. Until that was done it would seem unwise for the Utica Pipe Foundry Company to actually employ the two claimants here to carry on that business as a part of their own. It would seem more probable that the agreement was to give them employment on the terms specified in case they did conclude to take over the business of the Xardell Company. This would seem more reasonable and businesslike. This is what one of the witnesses for the Utica Pipe Foundry Company says was the agreement and understanding, and that he repeated it distinctly more than once.

[2] It has always been the practice of this court to adopt and approve the findings of the referee or special master on questions of fact, where there was a sharp dispute in the testimony, unless it clearly appeared that the finding and conclusion was either unsupported by the evidence or clearly against the weight of the evidence. It is not enough that the court thinks it might itself have arrived at a different conclusion. It must be satisfied on the record that the referee or special master was wrong in his conclusions. In this case this court cannot so say or find. It was a fair question of fact for the special master, who, as stated, saw and heard the witnesses, to decide.

The following cases indicate clearly the duty of the court in dealing with a question of fact, where the evidence conflicts, or different inferences may be drawn from a given or conceded state of facts: In re Knaszak (D. C.) 18 Am. Bankr. Rep. 187, 151 Fed. 503; In re Forth (D. C.) 18 Am. Bankr. Rep. 186, 151 Fed. 951; In re Simon & Sternberg (D. C.) 18 Am. Bankr. Rep. 204, 151 Fed. 507; In re Wheeler (C. C. A. 7th Circuit) 21 Am. Bankr. Rep. 262, 165 Fed. 188, 91 C. C. A. 222; In re Hodge (D. C.) 205 Fed. 824; Gibson v. Samples (In re Harvey) 202 Fed. 743, 121 C. C. A. 620; Haines v. First National Bank, 203 Fed. 225, 121 C. C. A. 431; Davis v. Schwartz, 155 U. S. 631, 638, 15 Sup. Ct. 237, 239, 39 L. Ed. 289; Kimberley v. Ames, 129 U. S. 512, 524, 9 Sup. Ct. 355, 359, 32 L. Ed. 764; Singleton v. Felton, 101 Fed. 527, 42 C. C. A. 57.

I think, therefore, that the report and findings of the special master should be approved and confirmed, and that there should be an order accordingly.