# Supreme Court Decisions.

## CAUSE OF ACTION AS TO FRAUDULENT DEED ACCRUES WITH DISCOVERY OF THE FRAUD.

### STIVENS v. SUMMERS ET AL.

Decided, June 2, 1903—68 Ohio State, p. 421.

*Time of Commencing Actions—Section .4982, Revised Statutes—Actions for Relief on Ground of Fraud—Action Not to Accrue Till Discovery of Fraud—Includes Action to Set Aside Fraudulent Deed —Must be Actual and Not Constructive Notice—Filing of Deed, Not Constructive Notice, When—Interpretation of Law.*

1. In Section 4982, Revised Statutes, which limits to four years actions for relief on the ground of fraud, the saving clause, "but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud," embraces actions to set aside deeds which are constructively fraudulent as to creditors of the grantor.
2. The clause does not contemplate a constructive discovery, and the cause of action does not accrue when the fraudulent deed is filed for record unless the plaintiff then receives actual notice of its execution and of the circumstances which render it fraudulent.

Error to the Circuit Court of Clinton County.

Plaintiff brought her action in the court of common pleas to set aside two deeds for real estate executed by the defendant, John J. Summers, to his two sons as being in fraud of creditors, and to subject the lands conveyed to the payment of a debt due from the grantor to plaintiff at the time of the conveyance. The cause was tried in the circuit court on appeal, and upon the issues joined the following facts were found by that court:

"First—On December 25, 1895, one J. W. Summers borrowed of the plaintiff nine hundred ($900) dollars and gave plaintiff therefor his promissory note with the defendant, John J. Summers, as surety, due in one year from date, with seven per cent. interest

thereon; the only consideration for said note was said money so loaned to said J. W. Summers and said John J. Summers bore no relation to said note except as surety, which fact was known to plaintiff.

"Second—On December 1, 1899, the plaintiff, Mary J. Stivens, by the consideration of the Court of Common Pleas of Clinton County, Ohio (in which county the said John J. Summers and J. W. Summers resided), duly and regularly recovered a judgment against the said John J. Summers and J. W. Summers, on said promissory note, for the sum of nine hundred and fifty-eight and sixty-two one-hundredths ($958.62) dollars being the amount then due on said note, and also for costs, amounting to twelve and three-hundredths ($12.03) dollars. Said judgment is still in force and wholly unpaid and unsatisfied, both John J. Summers and J. W. Summers being insolvent.

"Third—At the time said debt to plaintiff was incurred, to-wit, December 25, 1895, the said John J. Summers was the owner in fee simple of a large amount of real estate situate in Clinton county, Ohio, and was also owner of a large amount of personal property, and was at that time able to meet and pay all debts and claims against him.

"Fourth—On March 18, 1896, while the plaintiff was a creditor of the said John J. Summers, as above stated, he the said John J. Summers and Hannah Summers, his wife, executed and delivered to his son, Isaac R. Summers, a warranty deed thereby conveying to his said son, David E. Summers, seventy-five and sixty-one one-hundredths (75.61) acres of land belonging to the said John J. Summers, of the value of sixty ($60) dollars per acre, a total of forty-five hundred and thirty-six and sixty one-hundredths ($4,-536.60) dollars, and fully described in the amended petition of plaintiff as tract No. 1. Said deed contained a recital as to the consideration thereof, in the words and figures following, to-wit:

"'In consideration of natural love and affection, and thirteen hundred ($1,300) dollars to him paid' by the said Isaac R. Summers.' Said deed contains no other recital as to the consideration therefor. Said deed also reserved a life estate in said lands to the said John J. Summers and Hannah Summers, his wife, for and during their joint lives, and the life of the survivor of them. No consideration was in fact paid by the said Isaac R. Summers to the said John J. Summers for said land, but the said Isaac R. Summers did execute and deliver to the said John J. Summers four promissory notes, each for the sum of three hundred and twenty-five ($325) dollars, all of said notes made payable to the administrator of John J. Summers, deceased; the first note due in one year, the second in two years, the third in three years, and the fourth in four years, after the deaths of both John J. Summers and Hannah Summers, his wife, without interest; it being the

intention that no portion of said notes should be paid until the times above limited after the death of the survivor of said two grantors.

"At the same time, and as part of the same transaction, the said John J. Summers and Hannah Summers, his wife, executed and delivered to his son, David E. Summers, a warranty deed thereby conveying to his said son, David E. Summers, seventy-five and sixty-one one-hundredths (75.61) acres of land, belonging to the said John J. Summers, of the value of sixty ($60) dollars per acre, a total of forty-five hundred and thirty-six and sixty hundredths ($4,536.60) dollars and described in the amended petition of plaintiff as tract No. 2. Said deed also contained a recital as to the consideration thereof, in the words and figures following, to-wit: 'In consideration of natural love and affection, and twelve hundred (1,200) dollars, to him paid by the said David E. Summers.' Said deed contains no other recital as to the consideration therefor. Said deed also reserved a life estate in said lands to the said John J. Summers and Hannah Summers, his wife, for and during their joint lives, and the life of the survivor of them. No consideration was in fact paid by the said David E. Summers to the said John J. Summers for said land, but the said David E. Summers did execute and deliver to the said John J. Summers, four promissory notes, each for the sum of three hundred ($300) dollars all payable to the administrator of John J. Summers, deceased. The first note was due in one year, the second in two, the third in three, and the fourth in four years after the deaths of both John J. Summers and Hannah Summers, his wife, without interest; it being the intention that no portion of said notes should be paid until the times above limited after the death of the survivor of said two grantors.

"Both of said deeds were voluntary conveyances, and at the time of their execution and delivery, to-wit, March 18, 1896, the said John J. Summers was indebted to divers and sundry persons, including plaintiff, in an amount greatly in excess of the value of the property which he retained in his hands liable to the payment of his debts.

"In the execution and delivery of said deeds, there was no *actual* intent on the part of the said John J. Summers, Isaac R. Summers and David E. Summers, or any of them, to hinder, delay or defraud the creditors of the said John J. Summers, the purpose of said John J. Summers in executing said conveyances being to make a settlement of his property among his children, in his lifetime. Said deeds were both filed for record with the Recorder of Clinton County, Ohio, on March 28, 1896, and on March 31, 1896, were both duly recorded in the land records of Clinton county, Ohio.

"Fifth—On March 18, 1896, and ever thereafter, the said J.

W. Summers was, and still is insolvent; and on November 29, 1899, he made a general assignment for the benefit of his creditors. On the final settlement of said assignment by the assignee, after applying all of his property thereto, there remained unpaid of his indebtedness about the sum of eleven thousand ($11,000) dollars.

"Sixth—The plaintiff, Mary J. Stivens, had no actual knowledge or notice of the execution and delivery of said two deeds to the said Isaac R. Summers and David E. Summers, or of the existence of said deeds, until December 1, 1899, and she, the plaintiff, did not actually discover any of the facts constituting the alleged fraud in this case until December 1, 1899.

"Seventh—The plaintiff commenced this action on March 31, 1900.

"As its conclusions of law upon the above facts the court find: (1) That said two deeds are constructively fraudulent only. That the plaintiff's cause of action is barred by the statute of limitations and she can not recover in this action, and thereupon the court find for the defendants, John J. Summers, Isaac R. Summers and David E. Summers, on the issues joined."

This is a petition in error for the reversal of the judgment in favor of the defendants which the circuit court rendered upon said finding.

*A. E. Clevenger* and *West & Walker,* for plaintiff in error.

*Smith & Clevenger,* for defendants in error.

SHAUCK, J.; BURKET, C. J., SPEAR, DAVIS, PRICE and CREW, JJ., concur.

The record does not suggest that the circuit court was unmindful of the doctrine of *Jamison* v. *McNally et al,* 21 Ohio St., 295, since its conclusion of law concedes that under our statute a deed may, at the suit of a creditor of the grantor, be set aside for constructive as well as for actual fraud, and that these deeds were constructively fraudulent. Upon that point the briefs of counsel are in accord.

The proposition by which the judgment of the circuit court must be tested is stated by it in its conclusion of law: "That the plaintiff's cause of action is barred by the statute of limitations." The pertinent provision of the statute is in Section 4982, which defines the actions which may be brought within four years, that lastly stated being "an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have

accrued until the discovery of the fraud." Of the facts found the following are brought into prominence by the opposite views of counsel; the deeds were filed for record with the recorder of the county in which the lands are situated more than four years before the bringing of the action; the deeds were only constructively fraudulent; until within four years from the bringing of her action the plaintiff did not have actual notice of the execution of the deeds, nor did she prior to that time actually discover any of the facts which made the deeds fraudulent. The fraudulent deeds having been executed more than four years before the beginning of the action, the precise question is whether it is within the provision that "the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." We are not favored with the opinion of the circuit court, but counsel urge that it properly concluded that the case is not within the saving clause of the statute because the deeds were only constructively fraudulent, and because they were filed for record more than four years before the action was brought. The numerous cases cited in support of this view will be found in the reporter's abstract of the briefs. It is not necessary to analyze them separately. Most of them obviously depend upon provisions not found in our statute, or upon facts not found in the present case. A statute providing that in an action for relief on the ground of fraud the cause of action shall not be deemed to have accrued until the discovery of the fraud distinguishes itself from one which suspends the bar of the statute because of the fraudulent concealment of the cause of action; and this case involves no consideration arising out of the relation of trustee and beneficiary. When not influenced by peculiar provisions of recording acts the view generally taken is that the registration of a deed does not operate retrospectively so as to affect the holders of antecedent rights (Pomeroy Equity Jurisprudence, Secs. 656-8). This view has been consistently maintained in this state (*Leiby* v. *Wolf*, 10 Ohio, 83, and cases following it; *Sharp* v. *Myers,* 1 Circ. Dec., 374; 2 C. C. R., 82, approved by this court in affirming the judgment). If we felt at liberty to depart from this doctrine and to assume that the recording act affords a refuge to a fraudulent grantor or his fraudulent grantee another difficulty would be encountered. Assuming that the plaintiff was charged with knowledge of these deeds when they were left for record and of the fact that they were by way of

gift, knowledge of essential elements of fraud would still be wanting. Such a deed by one who retains property fully sufficient to discharge his debts is not a fraud upon his creditors. Since the action could not be maintained but for the facts found respecting the financial condition of the grantor at the time of making the deeds, and since the record did not disclose those facts, it can not be said that the fraud was discovered until the plaintiff, from a different source, received notice of such facts. A deed fraudulent as to creditors may recite the payment of a full and valuable consideration by the grantee, and an examination of the record would not disclose to a creditor of the grantor that a cause of action has accrued in his favor. It would inform him that the land conveyed can not be subjected to the payment of his claim because a valid title thereto has become vested in a purchaser for value. In such case it can not be said that the fraud has been discovered until the creditor has notice of the falsity of the recitation as to the consideration. It seems, therefore, that the judgment of the circuit court is not justified by the fact that the deeds were filed for record more than four years before the action was brought. The opposite conclusion involves an erroneous view of the statute relating to the recording of deeds, as well as of that by which actions of this character are limited.

Nor is the conclusion of the circuit court justified by its finding that these deeds were only constructively fraudulent. Usually, and in these cases always, the consequences of fraud are not determined by its character. In order that an act be constructively fraudulent it is essential that it would, either in the particular case or in common experience, lead to consequences equivalent to those following actual fraud. By the act of the debtor these lands had been placed beyond the reach of an execution at law. The creditor's resort to equity being thus made necessary, neither the principles nor the statutory provisions involved suggest that his rights may be affected by considering whether the act of the debtor proceeded from evil design or from an innocent mistake respecting his financial condition when the deed of gift was made. The language of the limiting section of the statute and of the saving clause obviously comprehends constructive as well as actual fraud. It being admitted that constructive fraud is included in the provisions of the statute by which the right of action is defined and in that by which it is limited, an exception should not

by interpretation be imported into that by which it is saved. The controlling fact found by the circuit court is that the action was brought within four years after the actual discovery of the fraud. It is gratifying to believe that long and uniform practice has prepared the bar of the state for these conclusions.

*Judgment reversed and judgment for plaintiff.*