### FIFTH THIRD NAT. BANK et al. v. JOHNSON et al.

(Circuit Court of Appeals, Sixth Circuit. January 5, 1915.)

No. 2650.

1. FRAUDULENT CONVEYANCES ⊙⇒115—PREFERENCES—STATUTES.

Rev. St. Ohio, § 6343 (Gen. Code, § 11104), preserves the distinctions between (1) fraudulent conveyances and (2) preferences. A conveyance may not be set aside as a preference upon the issue whether it is fraudulent.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 370, 375-377; Dec. Dig. ⊙⇒115.]

2. CORPORATIONS ⊙⇒545—CONVEYANCE BY CORPORATION—FRAUD.

Nor is a conveyance by a corporation, which has not ceased to do business or surrender its property to its creditors, fraudulent under that section, as construed by the Ohio courts, merely because it prefers certain creditors, whose claims are guaranteed by the controlling directors of the corporation, since the assets of the corporation do not become a trust fund for the creditors, so long as it is a going concern.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2170-2175; Dec. Dig. ⊙⇒545.]

3. CORPORATIONS ⊙⇒542—POWERS—CEASING TO DO BUSINESS.

A corporation which had been engaged in the business of manufacturing certain machinery, and also in selling similar machinery manufactured by others, which discontinued its manufacturing business and sold its plant, but intended to continue its sales business, was still a going concern, though the manufacturing part of its business was the larger part, so that the sale of its plant was not necessarily fraudulent as to creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2154-2160; Dec. Dig. ⊙⇒542.]

4. CORPORATIONS ⊙⇒542—INSOLVENCY—ACTUAL FRAUD—SALE TO DIRECTOR.

Where a manufacturing plant was openly sold for a fair price to one of the directors, and the proceeds of the sale applied to the payment of corporate debts, which were guaranteed by the controlling directors, there was no actual fraud upon the creditors which will avoid the sale, though the corporation was insolvent at that time.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2154-2160; Dec. Dig. ⊙⇒542.]

5. APPEAL AND ERROR ⊙⇒1177—DISPOSITION OF THE CASE—REMAND.

Where the trustee in bankruptcy sought to recover property conveyed by the bankrupt, on the grounds that the sale was an illegal preference and was fraudulent, and the trial court was of the opinion at the trial

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that the bill did not sufficiently allege a preference, but erroneously allowed recovery on the ground of fraud, so that the parties did not have a full opportunity to be heard as to the allegations of preference, the trustee's bill will not be dismissed on appeal, but the case will be remanded for further proceedings, with opportunity to amend the bill as to the allegations of preference.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4604, 4606–4610; Dec. Dig. ☜1177.]

6. APPEAL AND ERROR ☜1199—REMAND—PROCEEDINGS IN LOWER COURT—RIGHTS OF PARTY NOT APPEALING.

Where an appeal was taken by part of the defendants before the court had lost control of its decree, the power of the trial court over the decree was suspended pending the appeal, and after remand it can vacate or revise its decree, so far as it affected the defendants who did not appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4674–4676; Dec. Dig. ☜1199.]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Bill by Edgar M. Johnson, trustee of the Cincinnati Equipment Company, a bankrupt, against the Fifth Third National Bank and others. Decree for the complainant, and certain defendants appeal. Reversed and remanded, with leave to amend the bill.

The Cincinnati Equipment Company was an Ohio corporation, engaged in manufacturing, repairing, and selling contractors' machinery and equipment, and also engaged in buying and selling, on commission, such machinery and equipment made by others. The business had been large, and at times profitable. It owned a plant, consisting of buildings and several acres of land, with railroad tracks and switches, near Cincinnati, and equipped with suitable power and appliances. In August, 1911, the company, on its direct paper and on its indorsement of customers' paper, owed to the Fifth Third National Bank about $75,000, to the Citizens' National Bank about the same sum, and to the Second National Bank $42,000. The chief stockholder—the one who, in fact, controlled the company—was Isaac Joseph, reputed to be a wealthy man. P. B. Warner, who had represented the company in the East, had come back to Cincinnati, and had for some time been active in the management. Joseph and Warner were directors. In the summer of 1910, it appeared that the manufacturing business was not continuing to be profitable, and it was more or less definitely decided to sell the plant on opportunity. Some offers were declined; but in the summer of 1911 it was arranged that the plant and the good will of the manufacturing business should be sold for $50,000 to Warner, or to a company which he was to organize. After some delays, the matter took definite shape, and it was settled that he was to pay the purchase price by canceling a $10,000 indebtedness from the company to him, by paying $10,000 cash, and by giving his notes for the remaining $30,000, secured by mortgage back on the plant. An understanding was also reached with the three banks that the $10,000 and these notes would be divided equally between them; the notes to be held as additional security, and the money to be applied on the debts. The banks were already secured on the customers' paper by the makers' liability, and on the direct paper by bonds signed by sureties. Joseph was surety on the bond at each bank, and Warner was surety only on the bond of the Fifth Third.

The transaction was closed by the acceptance, at a stockholders' meeting, August 15, 1911, of Warner's written proposition. The deed and bill of sale to Warner from the company and the mortgage back are dated September 1, 1911. Between September 13th and September 20th the $10,000 cash and the $30,000 notes were divided equally among the three banks. The real estate

mortgage was recorded September 27th, but the deed not until October 26th. The equipment company collected accounts, and sold personal property, and undertook to continue the other department, the brokerage part, of its business; but about November it became known that Joseph was in bad shape financially, and the insolvency of the equipment company became clear and public. January 22, 1912, it was adjudicated a voluntary bankrupt, and Edgar M. Johnson became trustee. He thereupon filed this bill in the District Court, making defendants thereto the three banks and Joseph and Warner and Warner's subsequent corporation, to which he had transferred title. The bill sought to set aside the conveyance to Warner and the distribution of the notes and money among the banks.

It is alleged in general terms that the deed, mortgage, and note distribution constituted a conveyance to hinder, delay, and defraud creditors, and constituted a preference by an insolvent, and that they were invalid under the laws of Ohio and under the bankruptcy law of the United States. It did not allege that any act of preference was committed within, or that any essential recording was delayed so as to reach a date within, four months before the bankruptcy adjudication, nor did it in terms say that the banks had reason to know they were getting more than would be received by other creditors of like class. The answers made denials suited to meet both the fraudulent conveyance theory and the preference theory of the bill. Testimony was taken in open court, and, on filing his opinion, the District Judge held, apparently following an announcement at the hearing, that because of its failure to allege all the facts necessary to state a case of voidable preference the bill must be treated as presenting only the proposition that the conveyance was one operating to hinder, delay, and defraud creditors. Recognizing that under the bankruptcy law a deed could not be considered fraudulent merely because it was a preference (Coder v. Arts, 213 U. S. 223, 241, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008), and that it was doubtful whether the proof established fraud, as distinguished from preference, in the sense required by the decision just cited, the District Judge further held that he would treat the case solely as one arising under that part of the Ohio statute of fraudulent conveyances [1] which relates to the intent to hinder, delay, or defraud, and the importation of this statute into the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 565 [Comp. St. 1913, § 9654]) by section 70e; that the transaction was constructively fraudulent, and so, under Ohio decisions, violated the Ohio statute; and that the deed and mortgage must be set aside, the banks must return to the trustee the $30,000 of notes and the $10,000 of cash, and the trustee (subject to certain reserved matters) must return these to Warner. From a decree accordingly, the banks and Joseph appeal. Warner and his corporation did not appeal.

Lawrence Maxwell and Murray Seasongood, both of Cincinnati, Ohio, for appellants.

W. B. Mente and S. G. Stricker, both of Cincinnati, Ohio, for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and KILLITS, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1] The Ohio statutes invalidate a conveyance made with intent to de-

---

1 "A sale, conveyance, transfer, mortgage or assignment, made in trust or otherwise, by a debtor or debtors, and every judgment suffered by him or them against himself or themselves in contemplation of insolvency with a design to prefer one or more creditors to the exclusion in whole or in part of others, and a sale, conveyance, transfer, mortgage or assignment made, or judgment procured by him or them to be rendered, in any manner, with intent to hinder, delay or defraud creditors, shall be void as to creditors of such debtor, or debtors at the suit of any creditor or creditors. * * *" (Section 11104, Gen. Code of Ohio; Rev. St. § 6343).

fraud creditors. The Bankruptcy Act (section 67e) does the same thing in the same language, except that there is a four-months limitation. It is not clear that the same words can mean one thing in the Bankruptcy Act and mean another thing in the state law, and that at the same time the federal law can be contemplated as establishing a uniform system of bankruptcy throughout the United States; but, however that may be (and we return to the subject hereafter), we are not satisfied that as a matter of settled Ohio construction the words have any different sense from that given to them by the Supreme Court of the United States in Coder v. Arts, supra, and reaffirmed with emphasis and elaboration in Van Iderstine v. National Discount Co., 227 U. S. 575, 582, 33 Sup. Ct. 343, 57 L. Ed. 652.

The discussion in the two cases just cited makes very clear that, as matter of accepted general construction and by the inherent meaning of the words, a preference is not, merely because it is a preference, a fraudulent conveyance, and that from the same viewpoint a conclusion of intent to "hinder, delay or defraud creditors," based only on the accomplishment of a preference among honest creditors, cannot stand. It follows that, before we can accept the contrary construction as part of the law of Ohio which we must follow in applying the statutes of that state, it must have been clearly declared by its courts. In support of this contrary construction, we are cited to two Ohio cases. Jamison v. McNally, 21 Ohio St. 295; Stivens v. Summers, 68 Ohio St. 421, 438, 67 N. E. 884. These do hold that a deed is obnoxious to this Ohio statute, if it is constructively fraudulent as well as if it is actually fraudulent; but this rule does not reach a conveyance free from criticism, except because it is a preference. Such a conveyance is, for that reason alone, no more constructively fraudulent than it is actively fraudulent. It is not fraudulent at all, unless some statute makes it so, constructively. As was said by Mr. Justice Lamar in the Van Iderstine Case, speaking of intent to prefer and intent to defraud (227 U. S. 582, 33 Sup. Ct. 345, 57 L. Ed. 652):

"But the two purposes are not of the same quality, either in conscience or in law, and one may exist without the other. The statute recognizes the difference between the intent to defraud and the intent to prefer, and also the difference between a fraudulent and a preferential conveyance. One is inherently and always vicious; the other innocent and valid, except when made in violation of the express provisions of a statute. One is malum in se and the other malum prohibitum, and then only to the extent that it is forbidden."

Stivens v. Summers, 68 Ohio St. 421, 438, 67 N. E. 884, was an attack on a deed made by an insolvent without adequate consideration, and therefore constructively fraudulent against existing creditors. Obviously it does not reach a deed merely preferential. Jamison v. McNally was the same kind of a case. So far as the conveyance secured a debt, and was thereby apparently a preference, it was sustained. It was pronounced constructively fraudulent and within this statute only as to the surplus value above the debt secured; that is, only to the extent that there was no consideration. This decision, therefore, furnishes no support for thinking that, in Ohio, a merely preferential conveyance is obnoxious to the "hinder, delay or

defraud" clause; and we find no later decisions of the Ohio Supreme Court more closely applicable. It is to be noted that since the Ohio statute above quoted took practically its present form in this respect, in 1898 (93 Ohio Laws, p. 290), all preferential transfers by an insolvent have been forbidden as expressly and absolutely as are fraudulent conveyances, and so there has been no occasion to expand, by construction, the prohibition of the latter so as to reach the former. In the absence of any statutory forbidding or regulating of preferences by insolvents, cases have frequently arisen where the preference given has seemed unconscionable, and of such character are most, if not all, of the decisions which have treated particular preferences as within the statute of fraudulent conveyances in its original form; but where preferences are expressly forbidden by law, or where some are forbidden and some permitted, so that they are directly affected and controlled by one statutory provision, there seems no occasion nor room for resorting to the constructive and indirect effect of another provision in the same or in another statute.

[2] It is next said, because the corporation was in fact insolvent, and because Joseph and Warner were controlling directors and were by this transaction personally indemnified on account of their suretyship for their corporation, that there was a constructive fraud, and that Rouse v. Bank, 46 Ohio St. 493, 22 N. E. 293, 5 L. R. A. 378, 15 Am. St. Rep. 644, compels this conclusion. As a construction of the Ohio statute, this case must be followed by this court; but the Supreme Court of the United States has said that this decision "proceeded in part upon a theory that the property of an insolvent corporation is a trust fund for its creditors in a wider and more general sense than could be maintained upon general principles of equity jurisprudence." Smith Co. v. McGroarty, 136 U. S. 237, 241, 10 Sup. Ct. 1017, 34 L. Ed. 346. The Supreme Court again expressed its disapproval of the extreme doctrine when, speaking by Mr. Justice Brewer in Sanford Co. v. Howe Co., 157 U. S. 312, 318, 15 Sup. Ct. 621, 623 (39 L. Ed. 713), it said:

"Are creditors, who are neither stockholders nor directors, but strangers to a corporation, disabled from taking security from the corporation by reason of the fact that upon the paper they hold there is also an indorsement of certain of the directors or stockholders? Must, as a matter of law, such creditors be content to share equally with the other creditors of the corporation because, forsooth, they have also the guaranty of some of the directors or stockholders, whose guaranty may or may not be worth anything?"

And see full review of decisions in Hollins v. Brierfield Co., 150 U. S. 371, 385 (14 Sup. Ct. 127, 37 L. Ed. 1113).

From the same point of view, Judge (later Mr. Justice) Lurton, speaking for this court, said in Rickerson v. Farrell, 75 Fed. 554, 565, 23 C. C. A. 302, 313:

"This court has not adopted the theory that the assets of a corporation become a trust fund in the hands of its directors, for equal distribution among all creditors upon the occurrence of insolvency. * * * If such a corporation may prefer a stranger who is a creditor, it may, likewise, prefer one of the corporators."

To the same effect see Judge Taft's opinion in Brown v. Grand Rapids Co., 58 Fed. 286, 292, 7 C. C. A. 225, 22 L. R. A. 817.

These cases admonish that Rouse v. Bank must not lead us beyond the real point there decided, which seems to be that the trust which makes it a constructive fraud to prefer one creditor over another arises when a corporation has abandoned the objects of its organization, yielded up dominion of its property to its creditors for administration and ceased to be a going concern. This interpretation and this limitation are confirmed by Damarin Co. v. Huron Co., 47 Ohio St. 581, 590, 26 N. E. 37, and were adopted by this court in Haines v. Bank, 203 Fed. 225, 121 C. C. A. 431.

[3] The record does not justify a conclusion that when the deed and mortgage were given, or that when the notes and money were distributed the equipment company had ceased to be a going concern. It was doubtless insolvent, and it was discontinuing a part—the larger part—of its business; but it was retaining assets having a book value of more than $200,000 and having actual value such that the later bankruptcy appraisal showed $37,000. Its debts above those to the banks were comparatively small. It had a large amount of personal property to sell and of accounts receivable to liquidate in connection with the branch of business discontinued, and it intended to continue another branch which had been profitable and might be again. In short, instead of yielding up dominion over all its property and going out of business, it was retaining dominion for the purpose of making its own present and future arrangements with creditors, and it was continuing its corporate operations, expecting to avoid a collapse for some little time, and hoping to do so permanently. Since the Supreme Court in the Brierfield and Sanford Cases disapproved the extreme application of the trust fund theory, we find no authoritative or persuasive decision authorizing its use in a case like this. Instances of application have been either where there had been complete abandonment of the status of "going concern," or where, as in the Rickerson Case, the managing directors had taken advantage of their position to mislead the unsecured creditors.

Rev. St. § 6343 (Gen. Code, § 11104) also invalidates any preferential conveyance by an insolvent, and this provision is said to inure to plaintiff's benefit through the operation of section 70e. If it were necessary to pass upon this question in order to decide this case, it so far suggests conflict between the Ohio statute and the purpose of the Bankruptcy Act to establish a uniform rule, and is so closely analogous to the matter involved in Stellwagen v. Clum, 218 Fed. 730, 134 C. C. A. 408 (opinion filed November 4, 1914), that we might find it necessary to certify the question, as we did there; but, for reasons to be stated, we think that should not be permitted to be, on this review, the controlling issue.

[4] The question of preference being passed, and the question of constructive fraud because of preference or because of the trust fund theory being eliminated, there remains the question of actual fraud, as defined in the Van Iderstine Case. The District Court did not make any finding on this subject. We think the record forbids the

conclusion that there was any unfairness in the transaction, unless unfairness is inherent in a preference by an insolvent corporation of a bank debt upon which its directors and managers are personally liable. The agreed price, $50,000, was a fair price; it was much less than the book value, but it was more than any offer which had ever been received after months of effort to sell; and the record strongly indicates that it was a good bargain for the seller and a bad one for the purchaser. Warner and the Warner Company have not appealed from the decree, which took the property away from them and relieved them from the payment of the purchase price. True, if there was a value in the property and good will above the purchase price, Warner would get a benefit from it; but no one would buy such a property who did not expect to make a profit—and a large one—and Warner was the only person in sight specially fitted to take the property over and carry on the business. His connection with the transaction was entirely open, and there accrued to him no concealed advantage and no actually unfair advantage—nothing save the preferential benefit. Neither the equipment company nor Joseph retained any interest of any kind in the property or had any advantage from the deal, except that the corporation debts were reduced and Joseph's suretyship liability correspondingly modified. Upon the theory of actual fraud, the bill must fail; and, from what has been said, it is evident that the decree below must be reversed.

[5] This would, ordinarily, lead to a direction that the bill be dismissed; but we are not satisfied to make that final disposition of the case. The theory that there was a preference in violation of the Bankruptcy Act (or of section 6343, Rev. St. Ohio) discloses, upon the facts proved, a meritorious controversy that ought to be decided, and that might better be decided in this case than in another case to be now commenced. This theory does not necessarily affect the conveyance and notes as much as it does the later distribution of the notes and money, and yet the two are closely involved. The deed has been set aside as against Warner, and he has not appealed. That it should be invalid as to him and yet valid to the extent of the interest of the banks suggests complications. Further, it would seem that a final decree now made or directed by us would be appealable to the Supreme Court, and that court might think that the pleadings sufficiently raised the issue of preference under the Bankruptcy Act, and might finally decide the case on that issue. Since the District Court sustained the defendants' contention that this issue was not on trial, it is probable that they did not take their full proofs on that subject, and a final decision on the present record might be unjust. Under these unusual conditions, we see no way to insure that the full controversy shall be finally decided, in this case and upon a proper record, save to direct that the decree be reversed as to appellants and the case remanded; that the plaintiff have opportunity to amend his bill so as sufficiently to allege a case of preference both under the state law and the Bankruptcy Act; that, if he does so, the defendants have opportunity to amend their answer, and that both parties take further proofs, if desired, on these issues; and that a de-

cree be entered thereupon as to the District Court shall seem proper. If plaintiff does not care to amend, his bill shall be finally dismissed as against appellants.. Appellants will recover costs of this court.

It should be understood that we look upon that part of Rev. St. § 6343 (section 11104, Gen. Code); above quoted as covering two measurably distinct subjects, which, until 1898, had always been found in separate sections. So far as the section affects preferential conveyances by an insolvent we have refrained from any discussion, reserving that subject for future consideration and decision or certification, if it shall eventually seem to' present a controlling question. So far as this section invalidates conveyances for other reasons than because preferential, we do consider it, and we reverse the case upon that issue alone.

[6] Since the court below had not lost control of its decree when this appeal was taken, and its power has been suspended pending the appeal, we think (without intimating any opinion as to the rightful course) that it will now have power to vacate or revise its decree as to Warner, if it shall think justice requires such course.