## DRAINAGE DIST. NO. 7 OF POINSETT COUNTY, ARK., et al. v. STERNBERG.

(Circuit Court of Appeals, Eight Circuit. October 7, 1926.)

No. 7057.

**1. Equity ⊜⇒447(4).**

Defendants, in action on contract involving accounting, *held* not entitled to leave to file bill of review, for taking of evidence as to advance payment, of which they had knowledge at time of trial.

**2. Contracts ⊜⇒312(3).**

Nonpayment during progress of work on excavating contract *held* to constitute material breach of entire contract, particularly when joined with notice of suspension of work.

**3. Drains ⊜⇒49.**

Failure of drainage district to sell bonds *held* not such legal difficulty as would author-

ize suspension of work under contract authorizing suspension only for delay or hindrance caused by legal difficulties.

**4. Drains ⬅⮞49—Contractor held entitled to damages for anticipated profits on excavating contract only on basis of estimated approximate yardage, although cross-section notes showed yardage to be more than estimated.**

Under excavating contract with drainage district, estimating total approximate yardage and forbidding claim for damages or anticipated profits for difference not exceeding 25 per cent., contractor *held* entitled to damages for anticipated profits only on basis of estimated yardage, although cross-section notes showed yardage to be more than estimated.

**5. Appeal and error ⬅⮞1178(6).**

Action on contract involving accounting after judgment for plaintiff may be remanded, in discretion of appellate court, for evidence as to advance payment inadvertently overlooked during trial.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action by H. J. Sternberg against Drainage District No. 7 of Poinsett County, Ark., and others. Decree for plaintiff, and defendants appeal. Decree modified, and case remanded, with directions.

Charles D. Frierson, of Jonesboro, Ark., for appellants.

Allen Hughes, of Memphis, Tenn., for appellee.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

STONE, Circuit Judge. This is an action on a contract involving an accounting. From a decree awarding plaintiff $109,332.66, defendants bring this appeal.

The action was by Sternberg, a contractor, against drainage district No. 7 of Poinsett county, Arkansas, and various individuals as the directors of that district. It was based upon a contract between Sternberg and the district whereby he was to do certain excavating. He alleged breach of the contract and claimed damages because of payments due under the contract and because of loss of anticipated profits which he would have made had the district performed its part of the contract and he been permitted to complete the work in accordance with the contract. The recovery for the above total of $109,332.66 was made up of payments due under the contract of $35,963.25 and anticipated profits of $73,369.41.

Appellants have filed here a motion for leave to file petition for leave to file bill in the nature of a bill of review. Also, they assign several errors, each of which will be stated and determined hereinafter.

### Bill of Review.

[1] We are asked to "hold the appeal in abeyance and render no decision thereon until the District Court may hear" a bill in the nature of a bill of review and take action thereon. Leave is asked to file such a bill directing the District Court to submit to a master or itself permit evidence of an advance payment of $15,118.88 to Sternberg and of a report of the district engineers and a resolution of the district board reducing the amount of work to be done under this contract to 200,736 cubic yards.

The far-reaching effect of permitting such evidence is alleged in the motion for leave to file to be to "involve the question of who did commit a breach of the contract, and go to show that no substantial breach of contract by the defendant had occurred previous to the termination of the contract by Sternberg." In the motion proper, it is alleged that evidence of the advance "materially changes the facts upon which the master and the District Court based the finding" that the district was indebted to Sternberg at the time of the work suspension order. In such motion it is, also, stated:

"That such a state of facts materially changes the situation with reference to who breached the contract. It would also change the situation before the lower court upon the question of whether or not any breach of contract by the drainage district was substantial and was the real cause of the termination thereof by Sternberg.

"Your petitioners respectfully state that with the fact of said payment of $15,118.88, three years before the work began by Sternberg on improvement No. 64, the result in the lower court would doubtless have been different, and the said omission was a material and substantial one, going to the basis of the entire decree and award."

In short, it means a retrial of the case. In our judgment, there should be an irresistible reason to compel such an unusual and drastic result.

The only reasons stated are that "by accident, mistake and oversight" the engineers of the district misinformed counsel in the trial of the case and in the preparation of the case after decree. Both of the matters now sought to be brought into the case were pleaded in the answer of the district. There is no suggestion that Sternberg or his counsel, in any way, misled counsel for the district. As to the advance item, it is alleged

that appellee knew this had been paid and that to allow him to retain it without credit would be, in effect, a fraud upon the district. We have found no allegation that Sternberg knew of the other item: The reduction of work to be done under the contract. Also, it appears that this evidence was known at all times to appellants, pleaded in their answer and was not evidence newly discovered after final decree. Nor is it sought to limit the bill to introducing evidence of an undisputed item of credit for the sole purpose of reducing the recovery. The purpose is to reopen the entire case and place the entire result of the suit in the balance. It seems to us that this matter can be reduced to the bald legal proposition of whether a party who has, through oversight or mistake of its own agents (uninfluenced by any action of the opposing party), omitted to introduce important evidence, which might affect the entire result, in the trial of a case, can, after that case is on appeal, have the trial overthrown and the case sent back for a complete trial anew.

While the case may be a hard one as to the advance item, if used purely in reduction of recovery and not to defeat recovery, yet we think a most dangerous precedent in an important particular of procedure would be made if this leave were granted and the case entirely reopened. We think the leave to file should be denied. Dumont v. Railway, 131 U. S. clx. Appex., 25 L. Ed. 520; Hill v. Phelps, 101 F. 650, 41 C. C. A. 569 (this court).

### Merits—Breach of Contract.

[2, 3] The first issue raised here is that the district did not breach the contract but that Sternberg voluntarily rescinded it. The breaches appellee relies upon are (1) nonpayment during the progress of the work as required by the contract and (2) notification to suspend work in violation of the contract. The evidence seems to sustain the claim of breach for nonpayment. Such a breach, under the circumstances of this contract and the character of this work, was a material breach of the entire contract (Guerini v. Carlin Co., 248 U. S. 334, 39 S. Ct. 102, 63 L. Ed. 275), and particularly so when joined with a suspension notice (A. R. Young Const. Co. v. Road District, 297 F. 127, this court). Also, we think there is a clear proof of breach by notification to quit work. It is not disputed that such notification was given. One claim is that the contract authorized such work suspension where there was "delay or hindrance caused by any legal difficulties that may arise" and that such "legal dif-

ficulties" did arise through actions involving bonds from which the district expected to realize funds to pay for this work. In our judgment, this was not the character of legal difficulties contemplated by the contract. The contract intended such difficulties as arose out of legal actions directly affecting the work to be done under this contract. The notification was a complete breach of the contract and the appellee was entitled to treat it as such.

Next, it is contended that Sternberg did not cease work because of the notification nor the nonpayment. A plausible supporting argument is made. However, the cause for stopping work, as stated by appellee, was nonpayment. In a communication by appellee to the appellant district, made before work was stopped, appellee stated that unless the back payments were made, it would be compelled to cease work. The fact of nonpayment is established and the master and the court found that to be the cause of cessation by appellee.

### Rescission of Contract.

The contention that the contract was rescinded, before breach, by appellee and, therefore, that there can be no recovery for anticipatory profits is met by what has been said above concerning breach of the contract.

### Excessive Recovery.

[4] We think appellants are right that the amount of anticipated profits recovered is excessive but not to the extent nor for the reason urged. The contract made the specifications part of the contract. The specifications estimated the work to be done as 1,189,000 cubic yards which was expressly stated to be "approximate only and subject to change under these specifications." The specifications provided, also, as follows:

"(8) Quantities.—The quantities or amounts of work to be done as shown in the report and 'Table of Quantities' herein are approximate only. The exact amounts will be calculated from time to time as the work progresses and shall be the basis of payment. The difference between the approximate and the exact amounts shall in no case exceed twenty-five per cent. (25%) of the estimated amount, and no claim for damages or anticipated profits shall be made for any difference not exceeding said twenty-five (25%) per cent., provided that no changes in the plans shall be made of such radical character as to prevent the contractor from using the machinery or equipment which has been approved by the engineer under paragraph 4,

without proper compensation to be determined by the engineer from the facts."

"(14) Extra Work.—When required by the engineer the contractor shall perform any extra work that may be, in the opinion of the engineer, necessary or desirable, and if not contemplated by the contract, the contractor shall receive the same unit prices for the same character of work as are specified in his contract. Should the work be of a different character from that covered by his contract, the contractor shall receive the actual cost to him plus twenty-five per cent. (25%); said cost to include the usual salaries and expenses paid to the field organization, fuel, oil, necessary repairs, premium on employer's liability contracts and costs of changes in equipment made necessary by the extra work, and these costs only."

There is no dispute that the work actually done was 595,349 cubic yards and the master and court adopted the highest cost price of doing the work which the evidence allowed under the contract. Therefore, this contention, which centers on the amount of uncompleted cubic yardage for which recovery may be had, depends upon what yardage was to be completed in the entire work and the application of paragraph 8 of the contract, above quoted. The cross-section notes showed 762,106 yet to be done, or a total of 1,357,455, or 168,455 cubic yards more than the specifications estimate of 1,189,000 cubic yards. The master thought that section 8 of the specifications authorized him to reduce the specification estimate of 1,189,000 cubic yards by 25 per cent. and take that result as the uncompleted work upon which the profits could be recovered. The court thought the above total of 1,357,455 cubic yards represented the work to be done and that the uncompleted work should be ascertained by deducting the completed yardage (595,349) therefrom. We think both were wrong. The evidence seems to support the court as to the total work to be done. We do not find any reason for an arbitrary reduction of 25 per cent., as made by the master. Section 8 of the specifications provided there should be no recovery for anticipated profits for a divergence of not exceeding 25 per cent. from the estimated work of 1,189,000 cubic yards. The difference between 1,189,000 and 1,357,455 cubic yards is less than 25 per cent. of the former, therefore, the contract permits no recovery for this excess yardage over 1,189,000. This leaves 1,189,000 cubic yards as the basis which, less the work done (595,349 cubic yards), leaves 593,651 cubic yards as the uncompleted work on which anticipated profits may be recovered. This yardage, at the profit of 9 cents per cubic yard, is $53,428.59. We think recovery, on account of anticipated profits, should be so limited.

### Remand for Evidence.

[5] Irrespective of their bill in the nature of a bill of review, appellants contend that the case should be remanded for further evidence. It states two grounds therefor. In their brief, counsel for appellants state that one of these grounds becomes immaterial if this court should hold that profits should be calculated only upon any "increase in the work in excess of 25 per cent. of the original estimate." As we have so held above, this ground is eliminated. The other ground is the payment of $15,188.88, discussed above, in connection with the bill in the nature of a bill of review. The legal theory for this position is that a court of equity has power to remand an entire case or any portion of or issue therein where it appears that the matter remanded has not been fully developed and where justice between the parties requires that opportunity for such full development should be given. We have carefully examined the citations thought by appellants to justify such action in this case.

Ballard v. Searls, 130 U. S. 50, 9 S. Ct. 418, 32 L. Ed. 846, was a case of remand of an entire proceeding because of a change in condition *subsequent* to the trial. Such procedure was based on the rule announced by Lord Redesdale in his work on Equity Pleading. That rule was confined to instances in which "new matter discovered could not be evidence of any matter in issue in the original cause, and yet clearly demonstrated error in the decree." Ballard v. Searls, supra, page 55 (9 S. Ct. 420). Here, the evidence is not "new matter" and it could have been introduced in the original cause as it was specifically pleaded.

Levy v. Arredondo, 12 Pet. 218, 9 L. Ed. 1062, was an action for breach of certain contracts. These contracts were stated to have been set out in the petition which was answered by defendant but they did not appear in the record before the Supreme Court. There being a diversity of view among the justices as to the possible effect of these contracts "and it being considered, from the manner the complainant has set out those contracts in his bill, and from the manner they are replied to by the defendant, Arredondo, that they are substantially exhibits in the cause which should have been annexed by the complainant to his bill; and which the superior court of the eastern district of Florida

might have called for, before it proceeded to make any decree in the cause" (page 218); the court remanded the case with the requirement that the contracts be produced or accounted for and evidence given of the contents of them. The basis for this action was that "this court have not sufficient materials before them whereon to found any final and satisfactory decree; and that justice requires that the cause should be opened in the court below, for further proofs" (page 219).

Lincoln Gas & Elec. Light Co. v. Lincoln, 223 U. S. 349, 32 S. Ct. 271, 56 L. Ed. 466, was a complicated rate case which had been heard by the trial court and no specific findings of fact made. It was remanded for reference to a master who should make specific findings of fact upon which exceptions might be presented and ruled by the trial court. The purpose of this remand was to narrow and clarify the issues before the Supreme Court and to secure "the aid of the trial court" thereon through distinct, definite rulings on specific findings of fact.

Dietz v. Horton Mfg. Co., 170 F. 865, 96 C. C. A. 41 (6th C. C. A.), was a trade-mark and unfair competition case which the court remanded, on its own motion, to permit an amendment of the pleadings to conform to the proof and in furtherance of justice as revealed by the evidence.

Parker-Washington Co. v. Cramer, 201 F. 878, 120 C. C. A. 216 (7th C. C. A.), was a personal injury suit. Jurisdiction in the federal court did not appear. The court, of its own motion, remanded the case for the purpose of amendment and evidence upon the matter of diversity of citizenship.

Chicago, R. I. & P. Ry. Co. v. Stephens, 218 F. 535, 134 C. C. A. 263 (6th C. C. A.), was like the Parker-Washington Company Case.

Fifth Third Nat. Bank v. Johnson, 219 F. 89, 134 C. C. A. 529 (6th C. C. A.), was an action by a trustee in bankruptcy to set aside a deed on the grounds that it was preferential and fraudulent. The trial court ruled that the bill did not sufficiently plead a preference but erroneously found that the deed was fraudulent. The court said (page 95 [134 C. C. A. 535]):

"This would, ordinarily, lead to a direction that the bill be dismissed; but we are not satisfied to make that final disposition of the case. The theory that there was a preference in violation of the Bankruptcy Act (Comp. St. § 9585 et seq.) or of section 6343, Rev. St. Ohio, discloses, upon the facts proved, a meritorious controversy that ought to be decided, and that might better be decided in this case than in another case to be now commenced. This theory does not necessarily affect the conveyance and notes as much as it does the later distribution of the notes and money, and yet the two are closely involved. The deed has been set aside as against Warner, and he has not appealed. That it should be invalid as to him and yet valid to the extent of the interest of the banks suggests complications. Further, it would seem that a final decree now made or directed by us would be appealable to the Supreme Court, and that court might think that the pleadings sufficiently raised the issue of preference under the Bankruptcy Act, and might finally decide the case on that issue. Since the District Court sustained the defendants' contention that this issue was not on trial, it is probable that they did not take their full proofs on that subject, and a final decision on the present record might be unjust. Under these unusual conditions, we see no way to insure that the full controversy shall be finally decided, in this case and upon a proper record, save to direct that the decree be reversed as to appellants and the case remanded; that the plaintiff have opportunity to amend his bill so as sufficiently to allege a case of preference both under the state law and the Bankruptcy Act; that, if he does so, the defendants have opportunity to amend their answer, and that both parties take further proofs, if desired, on these issues; and that a decree be entered thereupon as to the District Court shall seem proper."

Kirkpatrick v. McBride, 203 F. 449, 120 C. C. A. 328 (4th C. C. A.), was an action between a landlord and tenant and involved, as issues, the existence of a lease and the ownership of certain personal property. Upon the record before it, the Circuit Court of Appeals found "it difficult to arrive at satisfactory conclusions, and, as both sides in argument express their ability to produce such additional testimony as will substantiate their respective contentions, the court conceives that it would be in the interest of justice to modify the decree below to the extent of reopening the question as to the ownership of the personal property, and of permitting each side to introduce such additional testimony as they may be advised, so that the court below may upon the testimony now in the cause, with such additional testimony as may be introduced make a final decree as to the ownership of the property. As this is done upon the application of appellant, the court conceives that it is only proper that it should be done on condition that certain questions heretofore made that affect a full and

final adjudication on this question should be eliminated" (pages 449, 450).

Dillingham v. T. B. Allen & Co., 205 F. 146, 123 C. C. A. 378 (5th C. C. A.), was an action to recover lands and the value of timber cut therefrom. The Circuit Court of Appeals ruled that the plaintiff had failed to prove the market value of the timber taken by competent evidence. The court (page 147 [123 C. C. A. 379]) said:

"However it is clear that the timber was converted, and there is evidence in the record tending to show that the plaintiff was damaged as found by the master, though not technically proving market value. In this contingency equity would require that the parties be afforded an opportunity of supplying the omission, and to that end the decree is reversed and the case is remanded to the District Court, with instructions to recommit to the master the matter of damages, permitting all parties to introduce proof to show the market value of the timber at the time it was taken, and thereafter take such other proceedings as may be necessary to do full equity between the parties."

The appellant cited, also, 4 C. J. p. 1115, § 3096, page 1194, § 3234, page 1199, § 3239, page 1201, § 3241, and 2 R. C. L. pp. 284 and 285, §§ 239 and 240.

The Ballard, Levy, Lincoln Gas & Elec. Light Co. and Dietz Cases are hardly in point. The other federal cases are to the effect that a federal court of equity may, *in its discretion* and in the furtherance of justice, remand a case or an issue or item therein to the trial court for amendment of pleadings or for further evidence. An examination of these cases as well as a consideration of the reasons for the effect of and the possible abuse and harm from the exercise of this power convince that such power is purely discretionary and that such discretion will not be exercised except in rare and particular instances. The question is, therefore, whether the present is such an instance calling for the exercise of this discretion. In a careful examination of the record and briefs of appellee, we fail to find any direct challenge of the claim made by appellants, that there was a payment of $15,188.88 to appellee which was not covered by the evidence but which was alleged in the answer and which was not credited in the decree. The presumption is, therefore, very strong that such payment was, in fact, made. The facts concerning it—to establish or rebut it —would naturally be fully within the knowledge of both parties. This decree was not superseded. An exhibit to the motion for leave

to file petition for leave to file bill in the nature of a bill of review shows that the parties agreed upon a form and method of payment of the decree which was for $109,332.66. This plan was by certificates of indebtedness bearing interest from the date thereof (three days after the decree) at 6 per cent. Of these certificates, $35,963.25 were delivered to appellee leaving a balance in the hands of the district of $73,369.41. As the reduction in recovery on account of anticipated profits and the allowance of the payment of $15,188.88 (if found to be properly allowable) would not affect the amount of payment on the decree already—a balance still being due—no injustice could be done appellee by permitting the showing asked. The injustice of permitting appellee to retain, unaccounted for, this considerable sum of $15,188.88 is clear, if it were in fact made. We think, therefore, that the decree should be modified to this extent and to this extent only: that the case be remanded with instructions to reduce the total amount of recovery to $89,391.84 and to reopen the case for evidence on the sole points of whether the alleged payment of $15,188.88 was made and, if made, should be credited in further reduction of the above amount of $89,391.84 but not for any purpose of reopening the entire case or of further considering any issue except as just above indicated.

It is so ordered. The motion for leave to file is denied.

The costs of this appeal are assessed against appellants. Dillingham v. T. B. Allen & Co., 205 F. 146, 147, 123 C. C. A. 378