## CHEMICAL NAT. BANK OF NEW YORK v. ARMSTRONG.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1895.)

### No. 56.

1. NATIONAL BANKS—BORROWING MONEY—POWER OF OFFICERS.
   A national bank, whose vice president borrows money in its name of another bank, and appropriates it to his own use, is not liable therefor, unless he was specially authorized to borrow the money, or his act was ratified. 8 C. C. A. 155, 59 Fed. 372, modified to accord with Bank v. Armstrong, 14 Sup. Ct. 572, 152 U. S. 346.

2. SAME—INSOLVENCY—DIVIDENDS—INTEREST.
   The receiver of an insolvent bank withdraws his offer to allow part of a claim by filing a pleading in the proceedings denying the liability of the bank on the claim, and the interest on dividends should be allowed the owner of claim as though no such offer had been made.

On rehearing. Modified. For former opinion, see 8 C. C. A. 155, 59 Fed. 372.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge. This case is before the court on two motions for a rehearing. The original opinion of the court filed at the last term is to be found in 16 U. S. App. 465, 8 C. C. A. 155, and 59 Fed. 372. The controversy related to the allowance of a claim for more than $300,000 in favor of the Chemical National Bank of New York, against David Armstrong, the receiver appointed by the comptroller of the currency to take charge of the assets of the Fidelity National Bank of Cincinnati, and to distribute the same in accordance with law to the persons properly entitled. The claim of the Chemical Bank was based on a loan made by it, as it supposed, to the Fidelity Bank, at the instance of E. L. Harper, the vice president of the Fidelity Bank. The loan was evidenced by a certificate of deposit for the amount of the loan, signed by the cashier of the Fidelity Bank, payable to E. L. Harper, and indorsed by him in blank. It was secured by a large amount of collateral, in the form of commercial paper. The amended answer of Armstrong, in the court below, averred that the alleged loan was made by E. L. Harper without authority, and that the funds obtained were never used by the Fidelity Bank, but were taken by Harper to his own

use, and the liability of the Fidelity Bank for the loan, or any part of it, was therefore denied. The issue thus made was not pressed by counsel for the receiver, and was decided against him, both in the circuit court and in this court, in the original opinion filed in this case. The decision here was made practically without argument by counsel, and is disposed of in our former opinion in a sentence.

The main question discussed when the case was first heard in this court was whether a creditor of the Fidelity Bank, holding collateral at the time of the declared insolvency, was obliged, in proving his claim against the insolvent bank, to reduce it by the amount collected on the collateral after the declared insolvency, and before the allowance of the claim. This court held that the claim of the creditor against the fund in the hands of the receiver must be allowed for the full amount due, with interest down to the time of the declared insolvency of the bank, without respect to the collateral then held or to collections made on it thereafter. No motion for a rehearing was made or granted upon this point, and the ruling of this court thereon remains unchanged.

Another question considered in the former opinion was in respect to the right of the claimant bank to have interest paid to it on dividends, the payment of which had been long delayed after the time when similar dividends were paid to all the other creditors. Upon this question the appellant conceived that, by the former opinion of this court, injustice had been done to it by allowing too small an amount for interest, and a motion was therefore made on its behalf for a rehearing thereon. An examination of the record led us to grant the motion. Pending that motion, no mandate could, under the rules of this court, issue to the circuit court. While the case thus remained within the breast of this court, and completely subject to its control, the supreme court of the United States decided and announced its opinion in the case of Bank v. Armstrong, reported in 152 U. S. 346, 14 Sup. Ct. 572, in which it was held that the borrowing of money by a bank, though not illegal, is so much out of the course of ordinary and legitimate banking business as to require those making the loan to see to it that the officer or agent acting for the bank had special authority to borrow money, and that where no such special authority appears, and no ratification of the unauthorized act is shown, the bank is not liable. Therefore the receiver made a motion for a rehearing on the question whether there was any liability at all of the Fidelity Bank to the Chemical Bank on the claim asserted and heretofore allowed by this court. The action of the circuit court in allowing the claim at all was assigned for error on the cross appeal by the receiver, and, as already stated, though not pressed, was nevertheless before this court for decision. Because the court still had the case under its control, and no mandate had gone down, and because the decision of the supreme court of the United States seemed to throw a new light on the question heretofore decided against the receiver, it was deemed proper to grant the motion to rehear the question. The fact that the point was not pressed by counsel for the receiver at

the original hearing doubtless vested a discretion in this court to refuse to rehear the issue now urged. We would not by our action in this case wish to establish a precedent that this court will rehear any case upon a question lurking in the record, and not pressed at the first hearing, because, in a subsequent decision of the supreme court, a principle is established by which such question must be decided in a different way, and a different conclusion in the case reached. In this case, however, the moving party is a trustee appointed, not by the beneficiaries, but by the comptroller of the currency, and we feel disposed to exercise the discretion which we have in favor of a trust fund thus administered, which we might not exercise in favor of parties representing their rights in person.

The supreme court, in its conclusion in Bank v. Armstrong, differs from the decisions of several state courts upon the same or kindred questions. In Bank v. Sullivan, 11 Wkly. Notes Cas. 362, the supreme court of Pennsylvania used this language:

"We have no doubt of the power of national banks to borrow money by means of negotiable paper, made or indorsed for their accommodation, and that they are bound by the contract of their presidents or cashiers to indemnify the person who may have accommodated them with his credit. It is a usual banking operation, and, unless expressly prohibited, would be necessarily implied in every bank charter."

In Barnes v. Bank, 19 N. Y. 152, a state bank of New York was held bound by a certificate of deposit issued by its cashier to evidence a loan made to the bank, although the cashier made the loan and used the proceeds for his individual purpose. The same principle was applied in the case of Coates v. Donnell, 94 N. Y. 168. Barnes v. Bank is cited with approval by the supreme court of the United States in the case of Merchants' Bank v. State Bank, 10 Wall. 604. The same principle is recognized and approved in Donnell v. Bank, 80 Mo. 165; Sturges v. Bank, 11 Ohio St. 153, 167; Rockwell v. Bank, 13 Wis. 653; Ballston Spa Bank v. Marine Bank, 16 Wis. 120, 134; Morse, Banks, § 160. The effect of the foregoing cases is that it is within the usual course of banking business for a bank to borrow money, and that the generally recognized authority of the cashier or of the managing officer of the bank extends to making such loans, and that, therefore, any one dealing with such officer has the right to rely on the existence of such authority unless the contrary appears. That the right to borrow money is incident to the banking business is decided by the judicial committee of the privy council in Bank v. Breillat, 6 Moore, P. C. 152, 193–195, and by the court of appeals of New York in Curtis v. Leavitt, 15 N. Y. 9. The effect of the decision in Bank v. Armstrong is to make the above rule as to the authority of a cashier to borrow money for the bank inapplicable to national banks; and the question to be decided in this case is whether there was any special authority vested in Harper, as the vice president of the Fidelity National Bank, to borrow money for the bank, or whether, in this particular case, his act in so doing was ratified by the bank. Counsel for the appellant states upon his brief that, had he anticipated any real controversy upon the question of the liability of the Fidelity Bank, there was

much evidence at hand to establish special authority of Harper and subsequent ratification by the bank. He therefore asks that, as the case must go back to the circuit court, in any event, the appellant be allowed to adduce additional evidence on these two points. In view of the fact that the decision of the Western National Bank against Armstrong gave an importance to these issues which they did not have under previous adjudications in the state courts, and in view of the discretion we have already exercised in favor of the receiver to allow a rehearing of the question, we think it only fair to the Chemical National Bank, the appellant herein, not to decide the question of special authority and of ratification on the record before us, but to reverse the decree for the reasons given in the former opinion, and to send the case back to the circuit court, with leave to the parties to introduce evidence on the issue whether the alleged loan created any liability against the Fidelity Bank at all. This court is very loth to open up a case for new evidence upon issues already decided, and has no intention of making a troublesome precedent by doing so in this case. The circumstances here are so peculiar as to prevent such a result.

And now as to the question of interest, which will become material only in case the liability of the Fidelity Bank is established. Dividends on claims against the Fidelity Bank, which had been duly allowed, were declared by the comptroller of the currency as follows: October 31, 1887, 25 per cent.; June 15, 1889, 10 per cent.; June 30, 1890, 10 per cent.; August 5, 1891, 5 per cent. The Chemical Bank did not present its claim for allowance until April 5, 1890. On April 25, 1890, the receiver offered to allow the claim of the Chemical Bank to the extent of $200,000, without prejudice, on the one hand, to the right of the Chemical Bank to sue for the allowance of the remaining $105,000, and without prejudice, on the other hand, to the right of the receiver to reduce the claim allowed below $200,000 in case the court should hold such reduction proper. The language in which this offer was made is given in the former opinion. Its effect we found to be as above stated. This we considered to be an equitable offer by the receiver, and one which ought, in equity, as between creditors entitled to share the same fund, to prevent the payment of interest upon any dividends which would have been paid then or thereafter, had the Chemical Bank seen fit to accept the offer. In the argument upon the rehearing, counsel for the Chemical Bank questions the correctness of the construction which the court placed upon the language of the receiver's offer, as well as of the view which the court took of the proper effect to be given to the offer, thus construed, upon the payment of interest. After a re-examination of these two questions, we are still of the opinion that our construction of the language of the receiver's offer was correct; and that thus construed, if it had remained in force, it ought to prevent the payment of interest on the dividends paid or to be paid on the $200,000. The argument of counsel proceeds on the theory that the question is to be settled on principles relating to the legal tender of money due at common law. We think, however, that those rules have little or no application in

a case like this, where the question is of equality of distribution of a trust fund between creditors. By the argument on the rehearing, however, our attention has been especially directed to the state of the pleadings below, as indicating a withdrawal by the receiver of this offer to allow the claim for $200,000. In the court below, in his amended petition, the receiver denied the liability on the part of the Fidelity Bank to the Chemical Bank for this loan, and this position of the receiver is emphasized by his present motion for a rehearing upon the issue thus made. We quite agree with counsel for the appellant that the raising of such an issue must be considered to be a withdrawal of the previous offer by the receiver, and, therefore, that the offer cannot now be used as a ground for refusing the payment of interest upon dividends upon the whole claim for the period after April 25, 1890, when the claim was presented and rejected, down to the time when such dividends shall be paid. The court overlooked this consideration in its former opinion, and to this extent the previous decision of the court is modified. The previous order of the court is therefore changed so as to make the order as follows: That the decree of the circuit court is reversed, with leave to the parties to adduce further evidence upon the issue whether the Fidelity Bank owes anything to the Chemical Bank by virtue of the alleged loan; that, if this issue is decided in favor of the receiver, the bill shall be dismissed, and a decree entered in favor of the receiver for the restitution of the $100,000 paid by the receiver July 25, 1892, to the Chemical Bank on the faith of the decree of the court below; that, if the liability of the Fidelity Bank for the loan is established, a decree shall be entered directing the receiver to allow the claim for $305,450 (being the amount of the loan and interest until the date of the declared insolvency, June 21, 1887), and to pay the dividends accruing on such claim, with interest, on those declared before April 25, 1890, from that date, and on those thereafter declared, from the date of their declaration, until the dividends and interest are paid, and to take credit, on the payment of such dividends and interest, for the $100,000 by him paid July 25, 1892, on the principle ordinarily applied in partial payments. · The costs of this appeal will be equally divided. The costs in the circuit court will abide the event.