STATE OF NEBRASKA v. FIRST NAT. BANK OF ORLEANS et al.

(Circuit Court, D. Nebraska. August 8, 1898.)

1. DEPOSIT OF STATE FUNDS—GIVING SECURITY AND PAYING INTEREST— LOAN.
   Where a state treasurer places state funds in a national bank, subject to check, the bank giving security therefor, and agreeing to pay interest on daily balances, the transaction is a deposit, and not a loan to the bank.

2. SAME—POWERS OF NATIONAL BANKS—BOND TO SECURE DEPOSIT.
   Giving bond to secure funds deposited with it is within the power of a national bank, and sureties on such bond are liable.

This was an action at law by the state of Nebraska against the First National Bank of Orleans, P. O. Hedlund, receiver, and John W.

Burton et al., sureties, to recover deposits of state funds secured by a bond executed by the bank and such sureties. The ruling is on the demurrer of the sureties to the petition.

C. J. Smyth, Atty. Gen., and Ed. P. Smith, Dep. Atty. Gen., for State of Nebraska.

Cobb & Harvey, for defendants.

MUNGER, District Judge. This action was commenced in the district court of Harlan county, and removed into this court. By the pleadings it is shown: That the First National Bank of Orleans is a corporation organized under the laws of the United States. That in September, 1895, said bank, for the purpose of becoming a state depository under the laws of the state of Nebraska, and for the purpose of enabling it to receive on deposit from the state treasurer of the state of Nebraska certain public moneys belonging to the state, and which said treasurer was authorized to deposit in depository banks, made, executed, and delivered to the state of Nebraska its obligation in writing, a copy of which is attached to the petition. Said bond was executed by the said bank as principal, and by the defendants, John M. Burton, George W. Burton, Pat Gibbons, John O. Hoffman, and M. F. Burton, as sureties, which bond was duly approved and filed by the proper officers of the state. The said bond was in the penal sum of $25,000, and provided that, in consideration of the depositing of the moneys of the state of Nebraska for safe-keeping in said bank by the state treasurer, said bank, in consideration of said deposit and for the privilege of keeping the same, agreed to pay 3 per cent. per annum, the same to be computed and paid quarterly upon the daily average of the sum of such amount as the bank should have deposited to the credit of the state for the quarter, or any fraction thereof, next preceding the payment of said per centum. Said bond contained a condition that if said bank "shall well and truly keep sums of money so deposited or to be deposited as aforesaid, subject to the check and order of the state treasurer as aforesaid, and shall pay over the same, and each and every part thereof, upon the written demand of the state treasurer, and shall estimate, calculate, and pay said per centum as aforesaid, and to his successor in said office as shall be by him demanded, and shall in all respects save and keep the people of the state of Nebraska and the said treasurer harmless and indemnified for, and by reason of the making of said deposit or deposits, then this obligation shall be void and of no effect; otherwise, to be and remain in full force and virtue." After the execution and delivery of said bond, the treasurer deposited in said bank certain moneys of said state, and there was at the time of the commencement of the action so on deposit in said bank the sum of $20,000, the moneys of the state of Nebraska. That said bank became insolvent, and P. O. Hedlund, one of the defendants, was appointed, by the comptroller of the currency, receiver thereof. Of said defendants, the bank and receiver have answered in said action. The other defendants, the sureties, have filed a general demurrer to plaintiff's petition, which is now to be disposed of.

In support of the demurrer it is contended that the transaction was one of borrowing money on the part of the bank, not in the usual and ordinary course of banking business; that such borrowing was in violation of the national banking act, and not within any of the powers conferred upon the bank, and illegal, the bond or obligation given void, and for such reason the sureties are not liable. It is not claimed in support of the demurrer that every borrowing of money on the part of a national bank is prohibited; but it is contended the fact that, under the depository law of Nebraska, the bank is required to make a bid for the deposit, agreeing to pay interest on the daily balances at a rate of not less than 3 per cent. per annum, and to execute a bond with sureties for the faithful payment of the amount of such deposit, with the interest thereon, that such a transaction is not a deposit in the ordinary sense, but a borrowing of money in a manner not in the usual and ordinary course of the business of banking. In support of their contention, counsel cite Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572; Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831; Armstrong v. Bank, 27 C. C. A. 601, 83 Fed. 556; Id., 31 U. S. App. 75, 13 C. C. A. 47, and 65 Fed. 573.

Bank v. Armstrong was an action brought by the Western National Bank of New York against Armstrong, as receiver of the Fidelity National Bank of Cincinnati, Ohio, to recover the sum of $207,290, on account of a loan made by the New York bank to the Ohio bank. There was no evidence that the vice president of the Ohio bank, who acted for said bank in the transaction, had received special authority from the board of directors to borrow the money. Justice Shiras, speaking for the court, said:

"It might even be questioned whether such a transaction would be within the power of the board of directors. The powers expressly granted are stated in the eighth section of the national bank act (Rev. St. § 5136, par. 7): A national bank can 'exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes.' The power to borrow money or to give notes is not expressly given by the act. The business of the bank is to lend, not to borrow, money; to discount the notes of others, not to get its own notes discounted. Still, as was said by this court, in the case of First Nat. Bank v. National Exchange Bank, 92 U. S. 122, 127: 'Authority is thus given in the act to transact such a banking business as is specified, and all incidental powers necessary to carry it on are granted. These powers are such as are required to meet all the legitimate demands of the authorized business, and to enable a bank to conduct its affairs, within the general scope of its charter, safely and prudently. This necessarily implies the right of a bank to incur liabilities in the regular course of its business, as well as to become the creditor of others.' Nor do we doubt that a bank, in certain circumstances, may become a temporary borrower of money. Yet such transactions would be so much out of the course of ordinary and legitimate banking as to require those making the loan to see to it that the officer or agent acting for the bank had special authority to borrow money. Even, therefore, if it be conceded that it was within the power of the board of directors of the Fidelity National Bank to borrow $200,000 on time, it is yet obvious that the vice president, however general his powers, could not exercise such a power unless specially authorized so to do; and it is equally obvious that persons dealing with the bank are presumed to know the extent of the general powers of the officers."

For the reason that there was no evidence of any authorization upon the part of the board of directors for the vice president to borrow the money, and the further fact that the money so borrowed in the name of the bank never came into its possession, but was appropriated by the vice president and assistant cashier, and no ratification on the part of the directors, it was held that no recovery could be had. Bank v. Kennedy was an action to hold the bank liable under the statute of California as a shareholder in a savings bank. The questions involved were whether a national bank could acquire the stock of another corporation by purchase, not having taken the same to secure an indebtedness to it, and whether, having purchased such stock and enjoyed the benefits of a shareholder, the bank was estopped from setting up the illegality of the transaction. Armstrong v. Bank was an action to recover for money borrowed. A recovery was had, for the reason that, while there was no evidence of special authority having been given the vice president by the board of directors, it was shown that a long-established usage existed between corresponding banks in both cities, where the lending and borrowing banks were respectively situated, of lending and borrowing through the executive officers of the banks, and, further, that the transaction had been ratified by the board of directors, the case being distinguished from that of Bank v. Armstrong.

The foregoing cases do not establish the fact that the borrowing of money on the part of a national bank is illegal, but that, when the transaction is not one in the usual course of banking business, authority must be shown to have been given by the board of directors, or a ratification by the board. Was, however, the transaction in question a borrowing of money, or a mere general deposit? Among the enumerated powers of a national bank is "receiving deposits." The depositing of money in a bank has been held in some cases to be a loaning by the depositor, and a borrowing by the bank, for the reason that the relation of creditor and debtor was thereby established. It is to be kept in mind that in the transaction in question, and according to the terms of the obligation sued on, the money deposited with the bank was not deposited for any fixed period of time, but was subject to withdrawal at any time on the check or order of the treasurer. In Laws' Estate, 144 Pa. St. 499, 22 Atl. 831, a guardian deposited the moneys of his ward in a bank to his account as guardian, the bank agreeing to pay 3 per cent. interest. On a failure of the bank it was sought to hold the guardian and his sureties liable for the loss. The question turned upon the fact as to whether the deposit by the guardian was a loan or investment of such money, the court saying:

"Was this transaction with the Bank of America a deposit of the money, or was it a loan or investment of it? A deposit is where a sum of money is left with a banker for safe-keeping, subject to order, and payable, not in the specific money deposited, but in an equal sum. It may or may not bear interest, according to the agreement. While the relation between the depositor and his banker is that of debtor and creditor simply, the transaction cannot in any sense be regarded as a loan, unless the money is left, not for safe-keeping, but for a fixed period at interest, in which case the transaction assumes all the characteristics of a loan. * * * In the present case the money was placed in the bank, not as an investment for any fixed period, but merely for safe-keeping and at a small rate of interest.

\* \* \* It is true that two weeks' notice was to be given of the withdrawal of the deposit; but this was a reasonable provision, and not inconsistent with a bank deposit. Almost all savings institutions stipulate for notice of withdrawals with their depositors, and such a stipulation is for the benefit, not only of the bank, but also of its depositors."

Allibone v. Ames (S. D.) 68 N. W. 165, was an action founded upon a bond given by a bank, with sureties to secure the payment of public funds deposited by Allibone as county treasurer. The defendants denied liability, for the reason that the deposit was, in effect, a loan to the bank; that by a law of the state it was a crime for the treasurer to lend public money. For that reason, the contract or bond was unlawful, and the defendants not liable thereon. In the opinion holding defendants liable, it is said:

"When the personal property involved is money, it may be difficult under some circumstances to determine whether the transaction should be called a 'deposit' or a 'loan'; but the two are not the same, and are never so regarded by any one in business or the ordinary affairs of life. Certainly, the thousands who daily deliver money to banks for safe-keeping and return in corresponding currency do not regard the transaction as a loan, nor do they so speak of it. A deposit is for the benefit of the depositor; a loan, for the benefit of the borrower. It is true, a deposit may also benefit the depositary, but such is not the primary object of the transaction. When the deposit is made for a fixed period, during which the depositor has no right to demand the return of the money, the transaction may be regarded as in all substantial respects a loan; but herein lies an essential distinction between a loan and a general deposit."

In the light of the foregoing authorities, I think the transaction in question to have been one of a deposit of public moneys, not a borrowing of money on the part of the bank. The fact that the bank bid for the money does not change the character of the transaction. Certainly, there can be no objection urged against a bank soliciting business. The state, through its legislative enactment, said to all banks and bankers it desired to place the public funds on deposit (not to loan), subject to withdrawal at any time on the check or order of its treasurer, and at a rate of interest not less than 3 per cent. per annum. The defendant bank accepted the deposit on the conditions offered. To my mind, the transaction was a deposit of money; but, whether regarded as a loan or deposit, I do not think it in violation of the authority conferred on a national bank. Certainly, the giving of the security to do what in law it was obligated to do was not a void act. The demurrer is overruled.