## D. W. BOSLEY CO. et al. v. WIRFS.

Circuit Court of Appeals, Eighth Circuit.
January 14, 1929.

No. 8159.

John C. Carpenter, of Chicago, Ill., for appellants.

John H. Bruninga, of St. Louis, Mo., for appellee.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge. This is a suit for the infringement of patents numbered 1,481,451, and 1,516,130. These patents were granted to the appellee, hereinafter referred to as plaintiff, on January 22 and November 18, 1924, respectively. An application for the one was filed November 28, 1921, and for the other January 8, 1923. The main object of each of the patents, as described therein, "is to produce a strong, simple, and inexpensive flexible gasket, having a neat appearance and provided with an inclosed packing element and a strong attaching flange extending from one side of the packing element."

The article of manufacture, sought to be protected by said patents, was designed for use on weather strips and as gaskets to make as nearly air-tight as possible the doors of refrigerators, and the doors and windows of other structures. It consisted of an elongated body of yielding fibrous packing, substantially circular. Over this was a flexible covering portion of water-tight texture, with its edges extended outwardly, where they came together on one side of the packing element, to form an attaching flange.

In the first of the patents, the marginal portions of the covering material were folded back inwardly in such manner as to form four-plys at the outer edge of the flange. These were in contact with each other. To bind the edges together and hold them in place, a row of stitches were taken at the junction thereof with the circular shaped body and another near the outer edge of the flange.

In the second patent, only one of the extending edges of the covering portion was folded back inwardly. However, it was folded back upon itself clear to the junction with the circular or elongated body, and in like case two rows of stitches were taken in the flange thus constituted, the one near the junction with the packing element and the other near the edge of the flange. This had the effect to make the flange three-ply, instead of two, at the junction with the packing element, and the same number at the outer margin, instead of four, as in the first patent, when both edges were folded back.

Asserting that the defendants had infringed his patents, as above described, plaintiff filed his bill in equity for an injunction and for an accounting of profits. The appellants hereinafter referred to as defendants resisted the action upon the grounds of the invalidity of said patents and noninfringement by the defendants. The trial court found that said patents were valid and that they had been infringed by the defendants. An order was granted to restrain further infringement and for an accounting of past infringement. From this decree the defendants appealed.

Heretofore this appeal was duly perfected and set for argument. When the case came on for hearing, however, appellants submitted a motion with supporting affidavits for permission to present to the trial court a motion for leave to reopen the case in that court. Appellants expressed a desire to amend their answer and to present affidavits thereon of a newly discovered public use of gaskets like those patented by the plaintiff more than two years before either of plaintiff's applications for his patents was filed in the Patent Office. This motion was granted. The opinion of the court will be found in (C. C. A.) 20 F.(2d) 629 et seq. Upon this opinion the case was reopened and additional evidence heard by the trial court. The trial

judge, however, adhered to his prior decision. All the evidence is now before us.

The evidence showed that no article of manufacture exactly similar to the article covered by plaintiff's patents had either been patented or previously used. It was in evidence that plaintiff's article was in general demand and the sale thereof largely exceeded the sale of other weather strips and gaskets previously in use. The evidence tended to show that it was a commercial success. There was evidence, however, that patented articles and others not patented, in many respects similar to the article covered by plaintiff's patents, were and had been used. Other pertinent facts will be stated in the course of the opinion.

1. Section 31, title 35, U. S. Code (35 USCA § 31), provides that: "Any person who has invented or discovered any new and useful * * * manufacture, * * * or any new and useful improvements thereof, * * * may * * * obtain a patent therefor." That the article of manufacture in question is patentable can hardly be doubted. The gaskets and weather stripping previously used had not been satisfactory. The article introduced by plaintiff became popular and was in general demand. The record shows that the sales of his structure were decidedly greater than the articles previously used. Moreover, as will hereinafter appear, the defendants manufactured and sold an article embodying the same principles as those used in plaintiff's invention.

The structure and use of plaintiff's manufacture was not the result of mere mechanical skill, but was a real mental conception. Previously the cylinder or tubular shape of the packing element had not been maintained. This was essential to the effective closure of openings. By plaintiff's invention, the flexible covering portion was drawn so tightly over the core or packing element, and stitched so close thereto, as to confine the core and maintain its tubular shape. The line of stitches near the outer edge, not only bound the edges together, but stiffened the tacking lap. There was room between the rows of stitches for the insertion of tacks for attachment purposes. Its quick recognition as a useful article, and as a great improvement over other articles previously used, together with the usual presumption of its validity, were sufficient to warrant the court in upholding its patentability. Tompkins-Hawley-Fuller Co. v. Holden (C. C. A.) 273 F. 424; Temco Electric Motor Co. v. Apco Mfg. Co., 275 U. S. 319, 48 S. Ct. 170, 72 L. Ed. 298.

2. On the subject of previous use, four different patents were offered in evidence. One of these, known as the Grant patent, No. 228,526, was a gasket or weather strip without attaching flange. The covering strip was sewed over the tubular body forming an inclosing case, the "longitudinal seam of which serves as a convenient location for the attachments by which it is to be secured to the door or window frame when the weather stripping is completed and desired to be put into use."

Plaintiff's patent was such an improvement as to provide for "a strong attaching flange extending from one side of the packing element." He designed to accomplish this by folding back the edges of the covering material and then stitching the folds in such manner as to give strength to the flange.

The Dodge patent, relied on by the defendants, is No. 378,778, and consisted of "a weather strip composed of an elastic cord or tubing held between a doubled strip of fabric, oilcloth, leather, or like material, the two layers of the said material being cemented together * * * so as to form a flange." The testimony was that this was unsatisfactory and impractical. Moreover, it lacked the additional strength of three or more plys.

In other patents relied on, which were similar in any respect to the article under inquiry, strength to the attaching portion had been obtained by the use of metallic strips. It was in evidence that these patents were before the department examiner at the time plaintiff was prosecuting his claim for patents.

3. It was admitted that one Harry O. Ingalls had used a gasket or weather strip of his own manufacture rather promiscuously on refrigerators, meat boxes, doors, windows, and other structures, and that it was somewhat similar to the invention here considered. The article used by Ingalls consisted, according to the stipulation, of a "strip of rubberized fabric folded to inclose a padding of cotton wick or the like; * * * that a line of stitching was run on a sewing machine through the contracting folds of the rubberized fabric, the free ends of the fabric projecting beyond this row of stitching; that one of the free edges of this fabric was then folded over the remaining edge to inclose it, and that this folded-over edge extended a short distance downwardly toward the stuffed part to provide a three-ply portion along one edge of the gasket; that a second seam was then sewed upon the sewing machine through this overlapped edge, so as to stitch it in position; that this second line of stitching passed

entirely through the three superimposed plies of the gasket; and that the stitched together plies of the stripping which extended beyond the stuffed portion were used as a tacking flange to tack the gasket or weather stripping to the door of the ice box or refrigerator."

The article used by Ingalls was offered in evidence, but it had no definite tacking lap. In attaching it to the door or other structure where used, the tacks were driven through the cushion or tubular portion. There was evidence that the Ward Refrigerator & Manufacturing Company of Los Angeles had in like manner previously used a similar article. The article thus used, as described by witnesses, was very similar to the article covered by plaintiff's patents, but no article mentioned as so designed and used was offered in evidence as an exhibit.

Defendants relied on the oral testimony of witnesses as to their recollection of the article used by them. This evidence was not satisfactory to the trial court. The law on this subject was aptly declared in this case by this court in 20 F.(2d) 629, loc. cit. 631, as follows: "We recognize the general rule that oral evidence of prior use without the thing used, or without corroborative written evidence to the effect that it was used, is generally insufficient to overcome the grant of a patent, unless it is clear, satisfactory, and practically conclusive." The testimony in the instant case was not sufficient to overcome the rule as above declared, nor the presumption of validity which attends the grant of patents.

4. It appears from the foregoing that plaintiff's invention was patentable, and that it had not been anticipated either in earlier patents or prior use. It remains to determine whether upon this record the trial court was correct in its conclusion that the defendants had infringed the plaintiff's patents. The evidence showed that the defendants had used from time to time gaskets which differed, if at all, in a slight degree from plaintiff's structure. It conclusively appeared that the defendants had used a gasket constructed exactly like that covered by plaintiff's first patent. Thereafter the use of this structure was abandoned, and defendants then used an article in all respects similar to that covered by plaintiff's second patent, save that one of the edges of the covering portion over the elongated body was turned backwardly over the other edge so as to enfold and inclose it. This gave three-ply as a tacking lap or flange exactly as in the case of plaintiff's second patent. The stitches were run in the same manner, save at the margin of the flange.

Defendants did not include the edge inclosed but made the row of stitches on the folded marginal edge alone. In one case, defendants sought to obtain the same results by omitting the marginal row of stitches and using only the line of stitches adjoining the tubular body. In other cases, defendants folded the edges of the tacking lap back, so as to secure four-ply on the whole width thereof. Two lines of stitches, the one near the tubular body and the other at the margin, bound the four-ply. These were but slight variations of plaintiff's structure, and obviously followed and adopted the principle employed in plaintiff's article.

In view of the foregoing, the decree of the trial court was correct, and will be affirmed.