## JENSEN et al. v. NEW YORK LIFE INS. CO.
### No. 9018.

Circuit Court of Appeals, Eighth Circuit.
May 9, 1931.

C. C. Fraizer, of Aurora, Neb., for appellants.

William C. Michaels, of Kansas City, Mo. (R. M. Switzler, of Omaha, Neb., C. A. Randolph, of Kansas City, Mo., Louis H. Cooke, of New York City, and Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., on the brief), for appellee.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a decree canceling a policy of life and disability insurance.

The facts are shortly as follows: The appellant Jensen, defendant below, made application for the policy to Mr. Tucker, a soliciting agent of the plaintiff, about January 7, 1928. The application contained the following provisions: "It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination; * * * 3. That only the President, a Vice-President, a Second Vice-President, a Secretary or the Treasurer of the Company can make, modify or discharge contracts, or waive any of the Company's rights or requirements; that notice to or knowledge of the soliciting agent or the Medical Examiner is not notice to or knowledge of the Company, and that neither one of them is authorized to accept risks or to pass upon insurability."

On January 13th, Jensen was examined by the company's physician. Two days afterward he was gored by a bull, and on the same day consulted a physician on account of the injury, and received medical treatment.

The policy was written by the company and sent to its agent Tucker, who delivered it to Jensen on February 12th. The mother of

Jensen was the beneficiary of the life insurance provisions.

A copy of the application was attached to the policy; and the policy contained, among other provisions, the following:

"The Contract.—The Policy and the application therefor, copy of which is attached hereto, constitute the entire contract. All statements made by the Insured shall, in absence of fraud, be deemed representations and not warranties, and no statement shall avoid the Policy or be used in defense to a claim under it, unless it is contained in the written application and a copy of the application is indorsed upon or attached to this Policy when issued. No agent is authorized to make or modify this contract, or to extend the time for the payment of premium, or to waive any lapse or forfeiture or any of the Company's rights or requirements. All benefits under this Policy are payable at the Home Office of the Company in the City and State of New York."

Tucker, on February 12th and prior thereto, knew of the accident that had happened to Jensen, and that he had been treated for the injury. The first premium was paid.

On December 18, 1928, Jensen made out and sent to the company a written claim for disability benefits under the policy, stating that he had become disabled on January 15, 1928, by reason of the injury. The physician who had attended him made a written statement also. These claim papers were received by the company about December 22, 1928, and the contention of the company is that then for the first time it learned of the injury and of the treatment given by a physician on January 15, 1928. The company thereupon wrote Jensen, calling his attention to the provision above quoted, contained in the application, and stating that the insurance applied for never took effect. The company tendered back the amount of the premium, with interest. Jensen, through his attorney, refused to accept the attempted refund of premium, declared his intention to consider the policy in full force and effect, and asked for settlement of total permanent disability benefits. The present suit against Jensen and his mother followed, the bill being filed April 29, 1929.

Both before and at the trial, Jensen offered to return the check of the company covering the premium paid, and interest.

In the trial court, a motion to dismiss the bill was made on the ground that the matter in controversy did not exceed, exclusive of interest and costs, the sum or value of $3,000. The motion was denied (D. C.) 38 F.(2d) 524.

An answer was interposed, setting up, among other matters, a plea in abatement based upon a suit commenced by Jensen against appellee, five days after the commencement of the present suit. The later suit was brought in the state district court of Hamilton county, Neb. The plea in abatement alleged that the suit in the state court involved the issue whether the insurance under the policy ever took effect; that a decree had been entered in the state court suit in favor of Jensen; but that the Insurance Company had appealed from the decree to the state Supreme Court, where the cause was still pending. This plea in abatement was overruled.

On the merits, the lower court found the facts in favor of the plaintiff Insurance Company, and entered a decree canceling the policy.

In this court, the first question which arises is that of jurisdiction. It is contended by appellant that $3,000 is not involved, since only benefits accruing by reason of the injury have been demanded by Jensen from the Insurance Company, and that these benefits amount to less than $3,000; and that this amount of the benefits demanded determines the question of jurisdiction. The appellee Insurance Company, however, contends that the amount involved or the "matter in controversy" is fixed by the face of the policy itself.

In New York Life Ins. Co. v. Swift, 38 F.(2d) 175, 176 (C. C. A. 5), the court said:

"The policies in suit are contracts by which the insured agrees to pay the premiums and the insurer agrees to pay the full face value of the policies on the death of the insured, an event bound to happen. With the uncertainty of life, it may occur at any time, and is an ever-present liability, which the insurer can do nothing to avert, except by seeking relief from a court of equity to cancel the policies on legal grounds. The policies are not voidable at the option of the insurer, nor is it optional with the insurer to compel the insured to accept either the loan or cash surrender value of the policies or to take policies of paid-up insurance. The only fixed and definite liability of the insurer is to pay the face of the policy. That amount measures the loss that plaintiff will suffer if the policies are not canceled. * * *

"It would not do for the plaintiff to wait until death had occurred or the insured had elected to take the cash surrender value of the policies or paid-up insurance, as, after the lapse of two years, they would be incontestable on any ground."

A similar ruling had been made by the same court in Massachusetts Protective Ass'n v. Kittles, 2 F.(2d) 211, and by the district court for the Western district of New York in the case of Judson v. Knights of the Maccabees of the World, 220 F. 1004.

In the case at bar, the policy contained a two-year incontestable clause, and the minimum face liability of the policy was shown to be $7,500.

In the case of Mutual Life Ins. Co. v. Thompson (D. C.) 27 F.(2d) 753, 754, Judge McDowell, with forceful reasoning, reached the conclusion that in a suit to cancel an insurance policy, if the bill alleged that the "value of the object sought by the bill," exclusive of interest and costs, exceeded the sum of $3,000, this was sufficient to confer jurisdiction.

In the case at bar, such an allegation as suggested by Judge McDowell is contained in the bill.

The trial court, in the case at bar, in passing upon the matter of jurisdictional amount, said: "The amount in controversy is alleged to exceed $3,000 exclusive of interest and costs. There is a showing on file that this amount is involved because the amount from which the insurance company seeks relief is $10,974.29, the reserve which the company must maintain against liability under this policy, until it is finally satisfied. The amount in controversy is sufficiently alleged and established." (D. C.) 38 F.(2d) 524.

In Elliott v. Empire Nat. Gas. Co., 4 F.(2d) 493, 497, an injunction case, this court, after reviewing many authorities, held that the "value of the matter in controversy" in Judicial Code § 24 (28 USCA § 41), means the pecuniary result to either party which the judgment entered in the case would directly produce, either at once or in the future.

Whether we apply, therefore, the test as laid down in the Fifth circuit, or the test suggested in the Fourth circuit by Judge McDowell, or the test suggested for analogous cases by this court in the Elliott Case, supra, and apparently followed by the trial court in the case at bar, the same result is reached that the requisite jurisdictional amount is involved, and that jurisdiction of the federal court existed

We come next to the matter of abatement.

At the time of the trial in the federal court, the suit in the state court was still pending in the Supreme Court of the state. It was on this ground that the federal court held that the plaintiff, in the suit before it, might proceed with the trial of its case. The question of the federal court enjoining Jensen from prosecuting his suit in the state court was not raised by the then counsel for the company.

Upon the hearing of the appeal in this court, counsel for appellant has advised us that the appeal in the state Supreme Court has been determined, and that the judgment in the state court in favor of Jensen has become final.

If such be the fact, then the question arises whether that final judgment in the state court is pleadable in bar in the present suit in the federal court.

It is important that these matters should be considered before the final determination of the present suit now pending in this court on appeal.

These matters, however, cannot properly be determined by this court upon the present record; so that the question of appropriate further procedure must be considered.

We might determine the present appeal upon the merits as disclosed by the record transmitted. If no error was found, we might, in affirming the decree, provide that the affirmance should be without prejudice to the beginning of an original suit by Jensen to set aside the decree in the federal court because of the final judgment in the state court. A suggestion as to such a course is found in United States v. Shelby Iron Co., 273 U. S. 571, 579, 47 S. Ct. 515, 71 L. Ed. 781. See, also, Woodward v. Boston, etc., Co., 63 F. 609 (C. C. A. 1); Hazeltine Corp. v. Wildermuth, 35 F.(2d) 733 (C. C. A. 2); Seymour v. White County, 92 F. 115 (C. C. A. 7).

Or we might reverse the decree and remand the cause to the district court for further pleadings and proceedings. This was the course followed in the Shelby Iron Company Case, supra, and is quite usual. See Levy v. Arredondo, 12 Pet. 218, 9 L. Ed. 1062; Butler v. Eaton, 141 U. S. 240, 11 S. Ct. 985, 35 L. Ed. 713; Wiggins Ferry Co. v. O. & M. Ry., 142 U. S. 396, 413, 416, 12 S. Ct. 188, 35 L. Ed. 1055; Scott v. Armstrong, 146 U. S. 499, 512, 13 S. Ct. 148, 36 L. Ed. 1059; Murdock v. Ward, 178 U. S. 139, 149, 20 S. Ct. 775, 44 L. Ed. 1009; United States

v. Rio Grande Irrigation Co., 184 U. S. 416, 423, 22 S. Ct. 428, 46 L. Ed. 619; Lincoln Gas Co. v. Lincoln, 223 U. S. 349, 365, 32 S. Ct. 271, 56 L. Ed. 466; Berry v. Davis, 242 U. S. 468, 37 S. Ct. 208, 61 L. Ed. 441; Watts, etc., Co. v. Unione Austriaca, 248 U. S. 9, 21, 22, 39 S. Ct. 1, 63 L. Ed. 100, 3 A. L. R. 323; The Carbonero, 106 F. 329, 336 (C. C. A. 1); E. I. Du Pont, etc., Co. v. Richmond Guano Co., 297 F. 580 (C. C. A. 4); Dillingham v. T. B. Allen & Co., 205 F. 146 (C. C. A. 5); Chemical Nat. Bank v. Armstrong, 65 F. 573, 28 L. R. A. 231 (C. C. A. 6); see Id., 176 U. S. 622, 20 S. Ct. 498, 44 L. Ed. 611; Barber v. Coit, 118 F. 272 (C. C. A. 6); Dietz v. Horton Mfg. Co., 170 F. 865 (C. C. A. 6); Fifth Third Nat. Bank v. Johnson, 219 F. 89 (C. C. A. 6); Ransom v. City of Pierre, 101 F. 665 (C. C. A. 8); Ellis v. Reed (C. C. A.) 258 F. 919, also Id., 238 F. 341 (C. C. A. 9).

Or we might follow one of the different methods of procedure shown in Mossberg v. Nutter, 124 F. 966 (C. C. A. 1); Cimiotti, etc., Co. v. American, etc., Co., 99 F. 1003 (C. C. A. 2); Baltimore S. S. Co. v. Phillips, 9 F.(2d) 902 (C. C. A. 2); Wagner v. Meccano, 235 F. 890 (C. C. A. 6); also Id. (C. C. A.) 246 F. 603, all following an expression in Roemer v. Simon, 91 U. S. 149, 23 L. Ed. 267; Marden v. Campbell, etc., Co., 67 F. 809 (C. C. A. 1); also Id. (C. C.) 70 F. 339, 340; Greene v. United Shoe Machinery Co., 124 F. 961 (C. C. A. 1); Firestone, etc., Co. v. Seiberling, 245 F. 937 (C. C. A. 6); Mutual Ins. Co. v. Lipp, 28 F.(2d) 863 (C. C. A. 9); Pagel v. MacLean, 51 S. Ct. 416, 75 L. Ed. ——, opinion filed April 13, 1931.

Still another course is open: To retain the present appeal in this court, but remand the cause to the trial court and grant leave to Jensen to apply to that court to reopen the case for the filing of a supplemental pleading and the introduction of evidence on the issue as to the effect of the judgment in the state court.

The cause can again be brought to this court on appeal from the later decree entered on the supplemental issue, and this court can then determine the whole cause, whether based upon the original or the later decree. Such a course has obvious advantages. It disposes of the whole cause in one suit; and it does away with the necessity of retrying, in the District Court, issues already adjudicated by a decree. It obviates the necessity of passing upon the question of the merits of the suit at this time, a question which may possibly not be necessary for this court to pass upon at all.

The course thus outlined was adopted by this court in the case of D. W. Bosley Co. v. Wirfs, 20 F.(2d) 629, and Id., 30 F.(2d) 667. In that case the questions involving the merits and arising on the first appeal were retained by this court for determination until a new question which had arisen should be determined by the trial court, for which purpose the cause was remanded to that court. The records on both appeals were before the court on the final hearing.

In a prior case, Drainage Dist. No. 7 v. Sternberg, 15 F.(2d) 41, and Id., 16 F.(2d) 598, this court had adopted a similar course of procedure, and in its opinion, the court reviewed numerous authorities. After eliminating certain of the cases cited, the court said [page 46 of 15 F.(2d)]: "The other federal cases are to the effect that a federal court of equity may, in its discretion and in the furtherance of justice, remand a case or an issue or item therein to the trial court for amendment of pleadings or for further evidence."

Similar procedure was followed in Ballard v. Searls, 130 U. S. 50, 56, 9 S. Ct. 418, 32 L. Ed. 846; Finefrock v. Kenova, etc., Co. (C. C. A.) 22 F.(2d) 627; also Id., 37 F.(2d) 310 (C. C. A. 4); St. Louis, etc., Co. v. Nix, 272 F. 977 (C. C. A. 8); Levinson v. United States, 32 F.(2d) 449 (C. C. A. 6); see also Kirkpatrick v. McBride, 203 F. 449 (C. C. A. 4).

We think the procedure last above outlined as approved by this court should be followed in the case at bar; especially so, as the matters which it is sought to bring to the attention of the court have occurred subsequent to the taking of the present appeal.

An order will, accordingly, be entered that leave is hereby granted to appellants, defendants below, to make a motion to the United States District Court below to open the case and allow reframing of the pleadings so as to present the issue of the existence of the alleged final judgment in the state court, and the effect thereof upon the suit in the federal court; and leave is hereby granted to said United States District Court to hear, consider, and decide such motion; and if, upon consideration of the evidence and the arguments of the respective parties on that motion, said United States District Court decides to grant said motion, then thereafter to admit such competent and relevant evi-

dence as any of the parties to this suit may present relative to the existence of the alleged final judgment in the state court, and the effect thereof upon the present cause in the federal court; and thereafter to consider and determine the case upon the record thereof thus supplemented. Meanwhile, the present appeal will remain in this court.